## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **EUSEBIO COTTO-VILLEGAS, et al.,**<br>　　　**Plaintiffs**<br><br>　　　　　**v.**<br><br>**FEDERAL EXPRESS CORPORATION,**<br>**et al.,**<br>　　　**Defendants** | **Civil No. 00-1969(PG)** |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiffs Eusebio Cotto-Villegas, his wife Ana Santana-Concepción, and their Conjugal Partnership filed this complaint on July 31, 2000, seeking recovery pursuant to the Employment Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 *et seq*. Defendant Federal Express Corporation moves for summary judgment contending there is no genuine issue of material fact that would warrant a trial (**Docket No. 66**). Plaintiffs oppose the motion (**Docket No. 74**). A reply and sur-reply followed (**Docket Nos. 82, 92**).

The motion was referred to the undersigned Magistrate-Judge on August 29, 2005, for a report and recommendation (**Docket No. 100**).

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The plaintiffs bring the instant action pursuant to the Employment Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1001 *et seq*. The main allegation in the complaint is that Eusebio Cotto-Villegas (hereafter "Cotto"), who is a participant in a short term disability (hereafter "STD") benefit plan administered by Federal Express Corporation (hereafter "FedEx") was arbitrarily denied STD benefits. Cotto also alleges that upon his retirement he was issued a defective notice under the Consolidated Omnibus Budget Reconciliation Act (hereafter

"COBRA") and was denied the opportunity to elect the same health care coverage as FedEx employees hired before January 1988.  The plaintiffs also bring supplemental state claims alleging violations of the state anti-discrimination statute and state torts, pursuant to Article 1802, 31 P.R. Laws Ann. § 5141.

Unless otherwise noted, the facts considered herein are derived from the complaint, statement of facts, and exhibits submitted by the parties in the motion for summary judgment and opposition thereto (**Docket Nos. 66, 75, 77, 83**).  They are construed in the light most favorable to plaintiffs, the non-moving parties. The facts are as follows:  Cotto was an employee of Flying Tiger Line (hereafter "FTL") from September 16, 1981 to August 6, 1989.  On August 7, 1989, FTL merged with FedEx. Cotto was classified as a Customer Service Agent for Puerto Rico. At the time of the merger FedEx devised a system of assigning seniority for former FTL employees who had years of service with FTL.  This calculation resulted in Cotto being assigned a hire date of June 24, 1986.  Cotto's FedEx Employee Identification card reflects his employee number as 98646 and a hire date of 06/24/86.

As an employee of FedEx, Cotto had coverage under a STD Plan and a Group Health Plan. In 1998 and 1999 the Plan Administrator for both plans was Group Health, Federal Express Corporation.  Also, in 1998  the STD Plan was a General Asset Plan and was paid for by Federal Express Corporation directly from its general assets. In 1998 the paying administrator for the STD Plan was Unicare. The 1999 Supplement to Employee Benefits indicates that the paying administrator changed to Kemper National Services (hereinafter Kemper).  A specific date for the change was not provided to the Court, although a letter delivered to Cotto indicates that as of at least September 25, 1998, the claims paying administrator was no longer Unicare and was Kemper.

The benefits handbook states, in its pertinent part:  "[t]he plan administrator, and in some cases the plan's claims paying administrator or [third party administrator], has the authority and discretion to interpret the plan's provisions and to determine eligibility to receive benefits under the plans."

The STD Plan provided that the employee was "solely responsible for reporting" his "STD claim to claims paying administrator."  It further provided that the employee was to "call the STD claims paying administrator . . . as soon as you know you will be unable to work beyond the medical absence period or at least 48 hours before the end of your medical absence pay."  The STD Plan further warned, "Call as soon as possible - claims received after 60 days are not covered by the STD Plan."  To enable the employee to submit his/her claim, a toll free  telephone number was provided.


Under the Plan, STD benefits were to be  denied if 1) the employee failed to furnish or authorize the release of requested medical information within the time specified by the claims paying administrator; 2) the employee failed to report his STD claim to Unicare within 60 days following the disability commencement date; 3) the attending physician failed to respond to the claims paying administrator's requests for medical information; or 4) the medical information provided did not initially support or continue to support the disability.  Under the Plan the employee was required to submit proof of disability with significant objective findings of disability based on the claims paying administrator's guidelines.

If a claim is denied, the employee is to be notified by the claims paying administrator.  If pursued, a review process follows. When a claim is denied, the employee may request reconsideration from the claims paying administrator.  Next, the employee may request a full and fair review of the denial of the claim.  At this juncture, the Plan required  that any appeal had to be

presented to an appeal committee for final determination.  The appeals committee has the authority and discretion to interpret the plans' provisions and to determine eligibility under the plans to receive benefits.  The Plan provides that the committee's decision will only be reviewed by a court if it finds that the committee's decision was unreasonable and not supported by substantial evidence.

Cotto sustained a work related injury on February 27, 1998, and reported to the State Insurance Fund (hereafter "SIF") on March 3, 1998. The SIF verified that on March 6, 1998, Cotto had requested a medical statement or certificate for submission to his company's disability insurance plan. On March 11, 1998, Carlos Dueño (hereafter "Dueño"), the Human Capital Management Program Manager for FedEx, informed Cotto by letter, of the benefits available to him during his medical leave of absence.  The letter advised Cotto he was "solely responsible for reporting" his "STD claim to the claim paying administrator, Unicare Life and Health Insurance"  and provided the telephone number for Unicare.  The letter stated, "[t]o report your STD claim contact Unicare at 1-800/686-1495.  The letter also warned  that "[f]ailure to respond promptly to requests from the PR Insurance Fund and Unicare may result in the delay, suspension or denial of your Workers' Compensation or Disability Plan benefits and the termination of your employment." Linda Yoakum (hereafter "Yoakum") a member of the Benefits Review Committee for FedEx Corporation, testified that this statement meant that the employee was required to provide medical documents to Unicare, once the case was opened.  She noted that this letter from FedEx management and not Unicare, refers to the process to be followed by a claimant.

The letter also requested that Cotto contact Dueño on a weekly basis. Cotto was specifically advised that he could only contact Dueño.  Cotto testified that because of the March 11th letter

wherein he was to make contact with Dueño once a week, he believed he was also to contact Dueño regarding the STD claim.

Cotto also testified and asserted during his deposition that he actually called Unicare on March 16, 1998, to report his claim. However, he does not know the name of the person with whom he spoke. According to Cotto, once he made the telephone call to Unicare it tolled the 60 day period to submit his claim. He further explained to Unicare that he could not secure a doctor's certificate because his records were misplaced. Cotto narrated having been told that Unicare would send him a package to complete, and once he received the medical report he had to send it and open the case or claim. At that time Unicare advised him that a medical certificate was required, and that without it, a claim could not be officially opened.

Cotto testified that he believed he had filed his claim with Unicare when he called it in March. He advised Dueño of his conversation with Unicare representatives sometime during March and April. Cotto testified that when he first spoke with Dueño he advised him Unicare had requested medical information. Cotto did not speak to Dueño again until he received the medical certificate that had been requested. Cotto testified that he tried to get the medical certificate, and relied upon what he had been told by Unicare to the effect that he could not go forward until he obtained said medical certificate. By April, when he had not received the certificate, Cotto contacted the SIF office to inquire and determine the status of his request.

On April 14, 1998, Dueño authored a letter to the SIF requesting medical information for three FedEx employees, including Cotto. In the letter, Dueño explained that FedEx provides their employees monetary benefits during the time an employee is incapacitated. It also states that FedEx cannot provide the benefits until it receives the medical certificate from the SIF as the same was

required before benefits could be afforded and begin.  Within the letter Cotto is asked to have the

medical information delivered to Unicare "as soon as possible".

During his deposition, Dueño explained that he included Cotto's name in the letter to enable

him to obtain and submit his medical record and information as soon as possible.  Contrary to

Cotto's testimony,  Dueño testified that he was unaware that Cotto had not received a medical

certificate from the SIF or that he was having problems having his medical record lost or misplaced

at the SIF.  Dueño testified that at the time he sent the letter to the SIF he had no idea of the status

of Cotto's claim before Unicare. Further, he testified that he was unaware if Cotto had or had not

filed his claim.  Nonetheless, Dueño testified that once he received the medical information he

automatically forwarded it to Unicare for the approval or denial of the claim as determined by

Unicare.

Dueño sent to Karen Hines , the Claims Administrative of Unicare the medical information

he received from the SIF for Cotto's injury on May 12, 1998.  The cover memo states, "Please advise

by email if this information is sufficient to approve the claim."  Dueño testified that the claim he refers

to is Cotto's claim with Unicare.  Dueño testified that after he sent the memo, Karen Hines informed

him that Unicare had not received any telephone calls or claims from Cotto, and that the last

telephone call recorded from Cotto was in 1994 when he was on a leave of absence.

On June 13, 1998, Cotto sent a letter to Dueño enclosing a medical certificate that he had

finally obtained from the SIF.  The letter refers to his claim with Unicare by stating "the information

is provided in order to expedite the handling of my claim through Unicare".  Next, on June 25, 1998,

Nelly Concepción, District Personnel Manager for FedEx, sent a letter to Cotto indicating that

FedEx's records revealed that as of said date Cotto had not complied with the instructions set forth

in the March 11th memo.  The letter states, that "as per policy, you only had 60 days from the injury date to file a claim with Unicare.  Upon verification with Unicare, as of today you have not filed your claim with them."

The June 25th letter indicates that the SIF would only provide FedEx with information regarding  Cotto's leave status and release date, but would never provide medical information to FedEx.  This  contradicts the May 12th memo authored by Dueño, when he acknowledges having received medical records from either the employee or the SIF, and there are Dueño's previous request to the SIF for Cotto's records.  The next day, June 26, 1998, Dueño sent a memorandum to Cotto advising as follows:

> You failed to follow the requirement instructions because as of today (over 90 days after your injury date) you have not opened the claim with Unicare.  As per the program guideline, you had only 60 days from the date of the injury to open the claim.  Therefore, all benefits under STD/LTD program is [sic] denied due to your failure in complying with the basic requirements.

On July 3, 1998, Cotto wrote a letter of protest arguing that neither Unicare nor FedEx would accept a claim without the medical certificate from the SIF.

Over a month and one-half later, on August 19, 1998, Dueño sent a letter to Cotto confirming a telephone conversation had on the same day, and  explaining that Cotto's claim for STD benefits had been denied, for failure to follow the procedures as explained in the March 12, 1998[1], Medical Leave of Absence Information and Requirement letter.  The letter states that it was Cotto's responsibility to call Unicare and initiate a claim, that Cotto had 60 days from the date of injury to do so, and he did not.  In the letter, Dueño goes on and explained the appeal process and advised Cotto that he had ten days to request a review with the Federal Express Corporation and for such

---

[1]The letter is actually dated March 11, 1998.

purposes, Cotto was provided an address in Memphis, Tennessee. The record reflects that the ten day period to seek review as explained by Dueño does not correspond and agree with the information in the STD Plan. The Plan states that the request for review must be submitted in writing to the address provided in the denial letter, within 60 days from the date the claims paying administrator sends its written denial.

In accordance with Dueño's instructions, Cotto authored a letter to FedEx Employee Benefits Quality & Performance Standards on August 28, 1998, explaining the difficulties he had encountered with the SIF in obtaining a medical certificate in order to have it submitted to FedEx. The letter states, "On March 6, 1998 I formulated the request for a medical certificate from SIF in order to submit my claim to Unicare". Further, he states, "It was my presumption that, our Managers, knowing how these offices work, it would be easier for them to explain Unicare of this situation, by far better than a telephone call."

On September 25, 1998, Cotto received a letter from Pat Henson, Benefits Specialist for FedEx. In the letter she advises Cotto that FedEx had received Cotto's August 28,1998, letter of appeal on September 21, 1998, and that FedEx was unable to accept the appeal. She indicated that Dueño had denied Cotto's claim in error. She further states that Dueño, "should have informed you that he could not accept your claim because he is not the claims paying administrator". This time Cotto was advised to contact Kemper to report his claim. He was further advised that only Kemper has the authority to accept, approve or deny a disability claim. According to Cotto, the September 26, 1998, letter is the first time he was notified that Unicare was no longer involved in managing the STD plan.

After he received the letter from Pat Henson, Cotto telephoned Kemper.  At that time he spoke to Elaine Fremer (hereafter "Fremer"), Case Initiation Coordinator for Kemper.  She asked Cotto if he had called Unicare.  Cotto responded "yes", but that it had been some time prior to the change to Kemper.  Fremer indicated there had been a transition phase and that Kemper was now handling the processing and settling of claims for FedEx.  Cotto did not specifically tell Framer he had called Unicare in March, but he did tell her that he had previously called Unicare.

On October 8, 1998, Cotto was advised by Fremer that his claim for STD was denied.  The letter states that the notice of claim was filed on September 29, 1998, which was 212 days after the commencement of his disability, and was not filed within 60 days of commencement of the STD as required by the plan.  It is undisputed that September 29, 1998, is the date in which Cotto called Fremer.  The letter makes no reference to his previous call to Unicare nor does it speak to the previous mistaken denial of the claim  by Dueño.  In said letter Cotto is advised that if he wished to perfect his claim he had to submit documentation supporting his assertion that he had given notice of the claim within 60 days. Cotto testified, "how can you prove a phone call . . . you don't have a receipt, you don't have anything".

Nonetheless, Cotto appealed the denial on October 21, 1998, and submitted certain information for analysis and review.  The STD record, as indicated by Cotto at his deposition, included the following documents: Fremer/Kemper letter dated October 8, 1998; Cotto letters dated October 21, 1998, August 28, 1998, March 23, 1998,  March 10, 1998; Dueño/FedEx letters dated August 19, 1998, and March 11, 1998; Concepción/FedEx letter dated June 25, 1998; Henson/FedEx letter dated September 25, 1998; SIF letter dated July 1, 1998; Lu Crowder/FedEx letter dated January 15, 1999; and, FedEx Leave of Absence History Screen.

FedEx acknowledges that the administrative record contains the Benefit Review Committee's January 13, 1999 minutes; Fremer/Kemper letter dated October 8, 1998; Cotto letters dated October 21, 1998, August 28, 1998, March 23, 1998, March 10, 1998; Dueño/FedEx letter dated March 11, 1998; Concepción/FedEx letter dated June 25, 1998; and, FedEx Leave of Absence History Screen. The administrative record as recognized by FedEx does not contain the August 19, 1998, denial letter by Dueño, the September 25, 1998, letter from Henson regarding the appeal; or the July 2, 1998 SIF letter wherein it admits its fault in locating and providing timely disclosure of the medical records pursuant to previous requests.

FedEx's Benefit Review Committee met on January 13, 1999.  It upheld the denial of the STD claim on the basis that the claim was filed 152 days late, stating that "[y]our request for STD benefits was not received by Unicare until 9/29/98".  Linda Yoakum (hereafter "Yoakum"), is a member of the Benefits Review Committee of FedEx Corporation, and she participated in rendering the decision in Cotto' appeal.  At there deposition she testified that Unicare was the claims processing administrator and that FedEx was the plan administrator.  Ultimately, under the final appeal authority (i.e. Benefit Review Committee), FedEx was responsible for determining the entitlement to and payment of all amounts under the plan.  She explained that once an employee is injured, he notifies Unicare/Kemper by telephone so that the disability process can begin. The telephone call starts the process and the claim is opened or reported as soon as the employee calls. Medical documentation has to be provided by the employee and his physician to substantiate the disability.  Yoakum testified that the claim and notice of injury documentation has to be provided within 60 days of the injury, yet  she also testified that she did not know when the medical documentation had to be received. Yoakum further testified that if the claim is not filed within 60 days of injury because the employee

was unable to obtain the medical information from the SIF, the claim is rejected.  The claim is rejected because there is no medical documentation to file and support the claim. According to Yoakum, the Benefit Review Committee had not developed any exceptions for the late filing of benefits, claims or supporting records.

Yoakum testified that Cotto's claim was reported on September 29, 1998.  She did not know what documents he had filed with his claim. She had no idea whether Cotto filed his claim through documents or by calling Kemper or Unicare. Yoakum indicated that normally medical documentation would be sent to Unicare, but since the case was an appeal, she did not know where the documentation had been sent. Yoakum testified that the Benefit Review  Committee was unaware that Pat Henson of FedEx had notified Cotto that Dueño had previously denied his STD claim in error. More so, the Benefit Review Committee did not know that Henson had advised Cotto to file his claim with Kemper.

Yoakum testified that Cotto's claim was denied because there is no record of his ever calling the Claims Paying Administrator. Reportedly, Cotto did not submit documentation to the Benefit Review Committee establishing that in March 1998 he had placed a telephone call to Unicare, although he did relay the information to Fremer.

 Yoakum indicated that Unicare has records to prove when an employee has called to notify of an injury, but she did not know what type of records Unicare, as the Claims Paying Administrator, kept to prove that Cotto had called to provide notice of his injury.  Regardless, Yoakum testified that she understood Cotto had not made a claim because there was no record of his alleged phone call.

Yoakum testified that the Benefit Review Committee did not take into consideration the fact that Cotto's medical record was lost by the SIF, because there was no record of him ever opening

the claim in the first place. Yoakum testified the only reason for the denial of the claim was that it was filed late. The denial determination was based upon the documents submitted to the Benefits Review Committee, and nothing else was considered.

In the case at bar, Cotto also asserts a claim because he was denied health care benefits upon his retirement from FedEx.  The Group Health Plan is a trusteed Plan, and its Trustee is The Northern Trust Company. The 1998 Employee Benefit Plan provides that an employee has continuing medical benefit coverage after retirement if the employee meets the age and service requirements and elects Retiree Health Coverage.  If the employee does not meet the age and service requirements, then health coverage ends, but the employee may elect COBRA.

The age and service requirements for FedEx employees hired prior to January 1, 1988, for continuous  health coverage is than an employee must be  age 55 and older with at least ten years of permanent part-time or permanent full-time continuous service after age 45.   For FedEx employees hired after January 1988, the employee must be age 55 or older and have at least 20 years of permanent part-time or permanent full-time continuous service after age 35 in order to receive full health benefits.

For former FTL employees, continuous health insurance coverage depends upon a number of factors including classification, age and years of continuous service. If a FedEx employee was an FTL employee who began to work for FedEx on August 7, 1989, and the employee's job classification on August 6, 1989, was under the categories "General" or "Administration"[2], to be eligible for continuous health coverage, the employee must retire at age 55 or older with at least 20

---

[2]FedEx asserts that  Cotto's classification fell under the "Administration" category.  Cotto had no knowledge of being placed in this classification.  Other classifications are "ramp and group operations" and 'pilot'.  Based upon his classification as Customer Service Agent, it does not appear that Cotto fall under either one of these two classifications.

years of continuous service.  The "continuous service" term for former FTL employees is calculated

based upon years of service with FTL.  Each year of FTL service equals  .3953 years of relative

continuous service with FedEx.

Cotto retired from FedEx, at age 62,  effective September 16, 1999.  During his deposition,

Cotto admitted that according to the FedEx formula he had not reached 20 years of continuous

service to qualify for retirement health coverage.  He received a written notice of COBRA rights on

September 20, 1999, indicating that he could continue health benefits under FedEx's Employee

Health Plan for a period of 18 months.  Sixty 60 days were given to elect benefits under COBRA.

Cotto elected not to have continued health care benefits through COBRA, but instead requested that

he be afforded the same health care coverage as FedEx employees hired prior to January 1, 1988.

His request was denied on the basis that he was not entitled to same because he did not meet the

years of service requirement.  Cotto was advised of his appeal rights and he exercised those rights

via a letter dated December 28,1999.  The Benefits Review Committee denied  his appeal and

notified Cotto of the decision on April 27, 2000.

## II.      SUMMARY JUDGMENT

FedEx moves for summary judgment asserting that the plan administrator's denial of STD and

retiree health insurance benefits was made in strict compliance with FedEx's STD Plan, its Summary

Plan Description and the evidence on the record.  More particularly, FedEx contends that the STD

benefits were denied based upon Cotto's failure to file his claim before the claims paying

administrator in accordance with the terms of the STD plan. With regard to the COBRA claim, FedEx

argues that the retiree health benefits were denied because plaintiffs were not entitled to said benefits

in accordance with the plan requirements for years of service.  FedEx further argues, therefore, that

the plan administrator's decisions were not arbitrary or capricious and should be upheld. It also seeks dismissal of the state tort claims and other damages sought on the basis of preemption.

### A.    Legal Standard

Summary judgment is appropriate when the evidence before the court shows that "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c)." *Seaboard Sur. Co. v. Town of Greenfield,* 370 F.3d 215, 218 (1st Cir. 2004).  When ruling on a motion of summary judgment, the court "must scrutinize the evidence in the light most agreeable to the nonmoving party, giving that party the benefit of any and all reasonable inferences. *Cox v. Hainey,* 391 F.3d 25, 27 (1st Cir. 2004).  While carrying out that task, the Court safely can ignore "conclusory allegations, improbable inferences, and unsupported speculation." *Suárez v. Pueblo Int'l, Inc.*, 229 F.3d 49, 53 (1st Cir. 2000) (quoting *Medina-Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990)).

An issue is "genuine" for purposes of summary judgment if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a "material fact" is one which "might affect the outcome of the suit under the governing law." *Hayes v. Douglas Dynamics, Inc.,* 8 F.3d 88, 90 (1st Cir. 1993) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

The nonmovant bears "the burden of producing specific facts sufficient to deflect the swing of the summary judgment scythe." *Mulvihill v. Top-Flite Golf Co.,* 335 F.3d 15, 19 (1st Cir. 2003). Those facts, typically set forth in affidavits, depositions, and the like, must have evidentiary value; thus, as a rule, "[e]vidence that is inadmissible at trial, such as inadmissible hearsay, may not be considered on summary judgment." *Vásquez v. López-Rosario,* 134 F.3d 28, 33 (1st Cir. 1998). Finally,  it is well settled that "[t]he mere existence of a scintilla of evidence" is insufficient to defeat

a properly supported motion for summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 252.

### B.     Standard of Review

Under ERISA's civil enforcement provision,[3] judicial review of a benefit entitlement decision may be the subject of two separate standards.  If the plan "gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," then the court must apply the deferential "arbitrary and capricious" standard of review.  *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Leahy v. Raytheon Co.*, 315 F.3d 11, 15 (1st Cir. 2002).  Under this scenario, the arbitrary and capricious standard applies if a reading of the plan in question indicates a clear grant of discretionary authority to the administrator in determining the eligibility for benefits of a participant or beneficiary.  *See Terry v. Bayer Corp.*, 145 F.3d 28, 37 (1st Cir. 1998).  This standard requires that the court "ask whether the aggregate evidence, viewed in the light most favorable to the non-moving party, could support a rational determination that the plan administrator acted arbitrarily in denying the claim for benefits."  *Twomey v. Delta Airlines Pilots Pension Plan*, 328 F.3d 27, 31 (1st Cir. 2003)(quoting *Leahy v. Raytheon Co.*, 315 F.3d at 18).

If there is no such clear grant of discretionary authority, then the standard of review is *de novo*. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. at 115; *see also Rodríguez-Abreu v. Chase Manhattan Bank, N.A.*, 986 F.2d 580, 583 (1st Cir. 1993).  In applying a *de novo* standard the court

---

[3]Section 502 of ERISA  provides in pertinent part:
> (a) A civil action may be brought-
> (1) by a participant or beneficiary-. . .
> (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;. . .

29 U.S.C. § 1132(a)(1)(B); *see also Lópes v. Metropolitan Life Ins. Co.,* 332 F.3d 1, 4 n.4 (1st Cir. 2003).

will examine whether the determination was incorrect or mistaken as opposed to unreasonable. *Márquez-Massas v. Squibb Mfg., Inc.,* 344 F.Supp.2d 315, 321 (D.P.R. 2004) (citations omitted). In making a *de novo* review the court's role is to ascertain whether the decision was correct. *Id.*

FedEx contends that the STD Plan and the health insurance plan grant discretionary authority to the plan administrator, making the standard of review the abuse of discretion standard. In support of its position, FedEx refers to the language in the benefits handbook which states, "[t]he plan administrator, and in some cases the plan's claims paying administrator or [third party administrator], has the authority and discretion to interpret the plan's provisions and to determine eligibility to receive benefits under the plans." Here, FedEx Corporation is the plan administrator and Unicare/Kemper is the paying administrator.

Plaintiffs contends that the Court should evaluate the denial of benefits under a less deferential standard due to a conflict of interest. They support their position by referring to the fact that the General Asset Plans, such as STD, are paid for by FedEx directly from its general assets. Hence, plaintiffs contend that the standard of review should be *de novo*.

It is well settled that when a plan administrator labors under a conflict of interest, courts may cede a diminished degree of deference--or no deference at all--to the administrator's determinations. *See, e.g., Doe v. Travelers Ins. Co.,* 167 F.3d 53, 57 (1st Cir. 1999); *Doyle v. Paul Revere Life Ins. Co.,* 144 F.3d 181, 184 (1st Cir. 1998). To affect the standard of review a conflict of interest must be real. *Leahy v. Raytheon Co.*, 315 F.3d 11, 16 (1st Cir. 2002). A chimerical, imagined, or conjectural conflict will not strip the fiduciary's determination of the deference that otherwise would be due. *Id.* (citations omitted).

Plaintiffs disregard First Circuit law that dictates that, ""[t]he fact that [] the plan administrator [ ] will have to pay [the plaintiff's] claim[ ] out of its own assets does not change [the arbitrary and capricious] standard of review."" *Wright v. R.R. Donnelly & Sons Co. Group Benefits Plan,* 402 F.3d 67, 75 (1st Cir. 2005) (quoting *Glista v. Unum Life Ins. Co. of Am.,* 378 F.3d 113, 125-26 (1st Cir. 2004) (noting that simply because a plan administrator has to pay a claim does not deprive the administrator of discretion when the terms of the plan grant discretion); *see also Doe v. Travelers Ins. Co.,* 167 F.3d at 57; *Doyle,* 144 F.3d at 184. Based upon First Circuit precedent, the Court declines to apply a less deferential standard. *Wright v. R.R. Donnelly & Sons Co.,* 402 F.3d at 75. Inasmuch as there is no conflict of interest, the undersigned applies an arbitrary and capricious standard of review.

The next step is to determine whether the denial of the claim was "objectively unreasonable in light of the available evidence." *Pari-Fasano v. ITT Hartford Life and Accident Ins. Co.,* 230 F.3d 415, 419 (1st Cir. 2000). Accordingly, the decision denying STD benefits will be upheld if the denial is reasonable and supported by substantial evidence. *Glista v. Unum Life Ins. Co. of Am.,* 378 F.3d at 126. "Evidence is substantial if it is reasonably sufficient to support a conclusion, and the existence of contrary evidence does not, in itself, make the administrator's decision arbitrary." *Gannon v. Metropolitan Life Ins. Co.,* 360 F.3d 211, 213 (1st Cir. 2004).

## C.    ERISA

FedEx asks the Court to uphold the decision to deny STD benefits to Cotto. It contends that the Benefit Review Committee did not act arbitrarily and capriciously when it denied Cotto's benefits based upon the information that it had at the time. More particularly, it argues that Cotto never informed anyone at FedEx in writing, during the review of his claim on appeal, that he had made

the March 1998 telephone call to Unicare to initiate the claim process.  It is FedEx's position that the first record of Cotto making a claim to the paying administrator occurred on September 29, 1998, when he called Kemper and spoke to Fremer.  It notes that in the record reviewed by the Benefit Review Committee when it made its decision, there is no mention of any telephone call being made to Unicare.

### 1.      Fiduciary Duty

Cotto opposes summary judgment arguing first that FedEx breached its fiduciary duty by misrepresenting the terms of the plan and failing to provide information.  FedEx argues that the Complaint does not raise a claim for breach of fiduciary duty by the plan administrator.  Admittedly, the Complaint does not contain the words "breach of a fiduciary duty" and the ERISA count is entitled "Illegal Denial of STD Benefits".  Nonetheless, the complaint alleges that FedEx made misrepresentations to Cotto and provided misinformation regarding the procedural framework for the review process, and further that it improperly processed his claim. These allegations rise to the level of a breach of fiduciary duty.   Continuing with this theme Cotto alleges that he was illegally denied STD benefits and denied the opportunity for a full and fair review of his claim pursuant to 29 U.S.C. § 1133[4].

The Supreme Court in *Varity Corp.* specifically reserved the question of "whether ERISA fiduciaries have any fiduciary duty to disclose truthful information on their own initiative, or in

---

[4]In accordance with regulations of the Secretary, every employee benefit plan shall:
**(1)** provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and
**(2)** afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.
29 U.S.C. § 1133.

response to employee inquiries." *Watson v. Deacones Waltham Hosp.*, 298 F.3d 102, 114 (1st Cir. 2002) (citing *Varity Corp. v. Howe*, 516 U.S. 489, 506 (1996)). Other Circuits have held that under certain circumstances, a fiduciary has an obligation to accurately convey material information to beneficiaries, including material information that the beneficiary did not specifically request. *See Griggs v. E.I. Dupont De Nemours & Co.*, 237 F.3d 371, 380-81 (4th Cir. 2001); *Bowerman v. Wal-Mart Stores, Inc.*, 226 F.3d 574, 590 (7th Cir. 2000); *Harte v. Bethlehem Steel Corp.*, 214 F.3d 446, 452 (3d Cir. 2000); *Krohn v. Huron Mem'l Hosp.*, 173 F.3d 542, 547-48, 550 (6th Cir.1999); *Barker v. American Mobil Power Corp.*, 64 F.3d 1397, 1403 (9th Cir.1995); *Eddy v. Colonial Life Ins. Co.*, 919 F.2d 747, 750-52 (D.C.Cir.1990).

"There are two limitations on the imposition of an affirmative fiduciary duty to inform beneficiaries of material facts about the plan." *Watson v. Deacones Waltham Hosp.*, 298 F.3d 102, 114 (1st Cir. 2002). The first is that "a duty only arises if there was some particular reason that the fiduciary should have known that his failure to convey the information would be harmful." *Id. at* 114-115 (citations omitted). A "failure to inform is a fiduciary breach only where the fiduciary 'knew of the confusion [detrimental to the participant] generated by its misrepresentations or its silence.'" *Id.* at 115 (quoting *UAW v. Skinner Engine Co.*, 188 F.3d 130, 148 (3d Cir. 1999)); *accord Griggs*, 237 F.3d at 381 ("[A]n ERISA fiduciary that knows or should know that a beneficiary labors under a material misunderstanding of plan benefits that will inure to his detriment cannot remain silent...."); *Krohn*, 173 F.3d at 548 ("[T]he 'duty to inform . . .entails. . . an affirmative duty to inform when the trustee knows that silence might be harmful.'") (quoting *Bixler v. Central. Pa. Teamsters Health & Welfare Fund*, 12 F.3d 1292, 1300 (3d Cir.1993)).

The second limitation is that "fiduciaries need not generally provide individualized unsolicited advice. *Watson v. Deacones Waltham Hosp.*, 298 F.3d at 115 (citations omitted). "It is 'uncontroversial ... that a fiduciary does not have to regularly inform beneficiaries every time a plan term affects them.'" *Id.* (citing *Harte,* 214 F.3d at 454).

FedEx did not move for summary judgment on the issue of a breach of fiduciary duty, and at this time the issue will not be addressed, other than to note that there seems to be a significant factual dispute as to the actions or inactions taken by FedEx in administering Cotto's STD claim.

## 2.      Record Considered

While FedEx contends that the Court should look only to the records the Benefit Review Committee examined in denying Cotto's' claim, as the First Circuit has noted, that is not always the case. "There is nothing uncommon about reviewing courts considering . . . internal memoranda containing ERISA interpretations." *Glista v. Unum Life Ins.* Co., 378 F.3d 113,124 (1st Cir. 2004). "[I]f an internal memorandum existed that favored [the claimant's] receipt of continuing benefits, the fact that it was disregarded would be powerful evidence of an arbitrary and capricious claims determination. *Cannon v. Unum Life Ins. Co.,* 219 F.R.D. 211, 214 (D. Me. 2004).

In the present case, there are a number of facts outside the administrative record that cannot be ignored by the Court.  Notably, it should not be overlooked, certain actions taken by Dueño during the time Cotto pursued his STD claim, correspondence authored by Dueño during the relevant time period and the deposition testimony of Yoakum.

Cotto is adamant that he telephoned Unicare on March 16, 1998, with his claim, and at that time he was told to that in order to proceed any further he must provide to Unicare the relevant medical documents from the SIF.  Dueño is equally adamant that he knew nothing of Cotto's claim

with Unicare, despite Cotto's testimony that he had advised Dueño in March or April of his claim and

that fact that he was having difficulty obtaining a medical certificate from the SIF. Interestingly, on

April 14, 1998, Dueño even wrote a letter to the SIF requesting the medical records of Cotto, and

in the letter Dueño refers to the disability benefits provided by FedEx. Dueño in his letter, specifically

asked the SIF that the medical records be sent directly to Unicare. This request occurred in April, and

it is in April that Cotto again, in apparent follow-up action, spoke to the SIF about his medical

records.  When the SIF finally sent the medical records to Dueño, what did he do, but forward them

to Unicare on May 12, 1998, with a memo referring to Cotto's **claim**. The correspondence produced

by Dueño could reasonably and logically lead to the conclusion that he was aware Cotto had

telephoned Unicare and reported his injury.  The record does not reflect that Dueño ever advised

Cotto that he had requested or received the medical records from the SIF or that he had forwarded

them on to Unicare.  Indeed, the record reflects that it was not until Cotto filed this action that he

became aware of the steps taken by Dueño in order to expedite submission of the records within the

SIF.   As a result, these internal memos between Dueño and the SIF were unavailable to Cotto to

present to the Benefit Review Committee as evidence of him having submitted a proper and timely

claim with Unicare.

Additionally, Yoakum provided various interpretations of the STD Plan, which the Court

considers.   She   gave conflicting testimony as to when the medical documentation has to be

provided: either within 60 days of the injury or if there was a different time period after the claim was

actually submitted.  Regardless, Yoakum considered that if a claim is not filed within 60 days from

injury because an employee is unable to obtain the medical information from the SIF, the claim is

rejected.   Given the uncertainty of interpretation of the STD Plan time frame requirements, the

undersigned  considers such factors in reviewing the Benefit Review Committee's decision.

### 3.        Arbitrary and Capricious

This leads to the next question, whether the decision of the Benefit Review Committee was

arbitrary and capricious. In determining whether to pay or deny benefits, a plan administrator must

make two general types of determinations: "First, he must determine the facts underlying the claim

for benefits. . . . Second, he must then determine whether those facts constitute a claim to be

honored under the terms of the plan."  *Pierre v. Connecticut Gen. Life Ins. Co.,* 932 F.2d 1552,

1557 (5th Cir.1991). The requirement that the administrator must give reasons for its benefits

decision applies to these two types of determinations. When a plan has denied benefits to a claimant,

§ 1132 of ERISA provides that the claimant may bring a suit in federal district court "to recover

benefits due to him under the terms of his plan."  29 U.S.C. § 1132(a)(1)(B).

It is Dueño's position that he called and reported his claim to Unicare as he was required to

do, and this started the claims process.

The terms of the STD plan provide that Cotto was to report his STD claim to Unicare within

60 days following the disability commencement date.  As set forth in the plan, the steps to follow in

filing an STD claim require the employee to simply "call" the STD claims paying administrator and

to call and inform his manager.  The plans also advises that the employee is responsible for

**reporting** the claim.   In the March 11, 1998, letter from Dueño, Cotto was advised , "[t]o report

your claim, contact Unicare at 1-800/686-1495."    Actually, Unicare alleges that denial of STD

benefits occurs if the employee fails to **report** his STD claim to Unicare within 60 days following the

disability commencement date[5].  As previously discussed, the correspondence authored by Dueño that was not provided to Cotto, could lead to the conclusion that Cotto timely reported the disability to Unicare.

Another consideration is the wording of the Plan.  The Plan indicates that for an employee to begin the claim process he must **report** by telephone to Unicare, and that the claim will be denied if he does not **report** by telephone within the 60 day time period.  Is reporting a claim the same as filing a claim?  If one merely makes a telephone call, is this considered a report ,or is this considered filing a claim.  It is not clear.  More so, the March 11, 1998, letter from Dueño, advised Cotto to telephone Unicare.  According to Cotto he did just that.  Cotto further alleges he authorized the release of his medical records by the SIF and there is evidence that when confronted with a delayed response, Dueño assisted by requesting such records from the SIF.  Further, the SIF responded not only submitting the medical evidence but acknowledging that the delay was prompted by its negligence in processing the request for information and afterwards by losing Cotto's records.

In this regard consideration is given to Yoakum's testimony indicating that Unicare has records to prove when an employee calls to notify of an injury, yet she did not specifically knew what type of records Unicare actually kept.  Regardless, Yoakum testified that she knew Cotto did not make the claim because there was no record of his alleged telephone call.  Although it is undisputed that Cotto did not present any evidence establishing he had made such telephone call to Unicare, when he spoke to Fremer at Kemper on September 29, 1998, he relayed the information that he had reported to Unicare by telephone. Cotto's relay of the information to Kemper, appears not to have

---

[5]It is to be noted that although it is not specified in the plan, it appears that FedEx interprets the STD plan as requiring the submission of medical evidence within 60 days of the injury.  If it is not received by this time, according to Yoakum the claim is denied.  The Plan documents submitted to the Court do not contain a 60 day period to submit the evidence.  The Plan merely requires that supporting evidence be submitted.

been considered as a report or notice of the claim. To Cotto's detriment he did not advise the Benefit

Review Committee that he had actually called Unicare within the time allotted.

Also, in dispute is what documents were considered by the Benefit Review Committee.

According to Cotto he submitted the July 2, 1998, letter from the SIF as proof of his quest to obtain

the medical certificate to support his claim, the August 19, 1998, denial of benefits letter from Dueño,

and the September 25, 1998, letter from Henson regarding the appeal.   FedEx indicates that the

documents it reviewed do not include the foregoing.   This is problematic inasmuch as these

documents appear to be highly relevant to Cotto's claim.   Also, is raises an issue of fact precluding

summary judgment.

Initially, it is noted that the Benefit Review Board found that Cotto's request for STD benefits

was not received by Unicare until 9/29/98".  This is clearly incorrect inasmuch as the record reflects

that by this date Unicare was no longer the claims paying administrator.  The September 29th date,

is the date Cotto apparently contacted Kemper as he was instructed to do on September 25th  by

FedEx (i.e. Pat Hanson).   Yet, because Henson's letter was not considered, the Benefit Review

Committee was unaware of this fact.  Additionally, because the Benefit Review Committee did not

consider either the Hanson letter or the August 19, 1998, Dueño letter, it did not take into account

Dueño's involvement in  acting as the claims paying administrator, denying the claim and providing

Cotto incorrect information regarding the appeal process. Nor did the Benefit Review Committee

consider Hanson's statements determining that Dueño had acted beyond his scope of authority and

"should have informed [you] that he could not accept [your] claim because he is not the claims

paying administrator" or Henson's understanding that Dueño had originally denied Cotto's claim "in

error".   These letters lead to the conclusion that Cotto's claim was submitted prior to September

29,1998. They also lead to the conclusion that Cotto's claims was improperly handled by FedEx and that even FedEx was confused on the issue of who was to handle the claim. It appears that the switching of claims paying administrator from Unicare to Kemper played a key factor in the mishandling of Cotto's claim.

Inasmuch as there remain issues of fact, particularly with regard to the records and questions of evidence considered by the Benefit Review Committee, summary judgment is in appropriate. It is therefore RECOMMENDED that the Motion for Summary Judgment as to the ERISA claim be DENIED.

**D.    COBRA**

FedEx next argues that the plaintiffs are not entitled to the retiree medical health coverage claimed. FedEx posits that the claim as alleged by plaintiffs is actually an ERISA claim, pursuant to 29 U.S.C. § 1132(a)(1)(B), and not a COBRA claim.  Nonetheless, FedEx argues that at the time Cotto was hired by FedEx he was advised of the conversion formula for FTL employees as well as the retiree health benefits.  More so, it argues that despite receiving written notice of their COBRA rights, the plaintiffs chose not to elect coverage under COBRA.  Instead, Cotto demanded that he be given the same type of health insurance as FedEx employees who had been hired prior to January 1,1988.

It is Cotto's position that he should have been offered the same continuation of coverage under the health care plan as similarly situated FedEx employees who were hired prior to the merger of FTL with FedEx.

The Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA), 29 U.S.C. § 1162, amended ERISA, and requires employers to continue insurance coverage for up to eighteen months

for separated employees.  If a "qualifying event" occurs, COBRA requires employers to provide former employees the opportunity to continue health care coverage under the employer's insurance plan at the former employee's expense. 29 U.S.C. §§ 1161(a).   A "qualifying event" is an event which, but for the continued coverage required by ERISA and COBRA, would result in the loss of coverage of a "qualified beneficiary." 29 U.S.C. §§ 1163.

COBRA expressly permits health plans to require payment of a premium for such continuation coverage. See 29 U.S.C. § 1162(3). The "continuation coverage" required by COBRA must be "identical to the coverage provided under the plan to similarly situated beneficiaries under the plan with respect to whom a qualifying event has not occurred,"29 U.S.C. § 1162(1), and "[i]f coverage is modified under the plan for any group of similarly situated beneficiaries, such coverage shall also be modified in the same manner for all individuals who are qualified beneficiaries under the plan pursuant to [COBRA]". *Id.*

The FedEx Employee Benefit Plan provides that an employee has continuing medical benefit coverage after retirement if the employee meets the age and service requirements and elects Retiree Health Coverage.  If the employee does not meet the age and service requirements, then health coverage ends, but the employee may elect COBRA. Because Cotto is a former FTL employee he falls under a different retirement plan that FedEx employees who were hired by FedEx prior to January 1, 1988. The terms of the Plan are clear.  Indeed,  Cotto admitted that according to the FedEx formula he had not reached 20 years of continued service to quality for retirement health coverage.  It is undisputed that he received a written notice of COBRA rights on September 20, 1999, indicating that he could continue health benefits under FedEx's Employee Health Plan for a period of 18 months, and that he chose not to make the election.

When Cotto argues that he is not afforded the same health care coverage as FedEx employees  hired prior to January 1, 1988, what he is really arguing is that he must pay for the coverage, not that the coverage is not the same.  COBRA expressly permits health plans to require payment of a premium for such continuation coverage.   Cotto cannot escape this fact , just as he cannot escape the fact that he does not have the qualifying years for continued health care coverage as provided by the Health Care Plan.

It is therefore RECOMMENDED that the Motion for Summary Judgment as to the COBRA issue be GRANTED.

### E.    Preemption by ERISA

The last issue raised by FedEx is that the state law claims brought by plaintiffs are preempted by ERISA.  It contends that the relief sought is limited to securing benefits under the Plan. The plaintiffs made no response to FedEx's motion for summary judgment on this  issue, and as a result plaintiffs are deemed to have waived any objection.  *See* Local Civil Rule 7.1(b).

The Complaint alleges a violation of state law anti-discrimination statute and the state tort act, Article 1802, 31 P.R. Laws Ann. § 5141.   There are no other allegations indicating how these statutes were violated.

ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan". 29 U.S.C. §§ 1144(a).  Congress enacted ERISA to "protect. . . the interests of participants in employee benefit plans and their beneficiaries" by setting out substantive regulatory requirements for employee benefit plans and to "provid [e] for appropriate remedies, sanctions, and ready access to the Federal courts." *Aetna Health Inc. v. Dávila,* 542 U.S. 200 (2004) (quoting 29 U.S.C. §§ 1001(b)). The purpose of ERISA is to provide a uniform regulatory regime over employee

benefit plans. To this end, ERISA includes expansive preemption provisions, *see* 29 U.S.C. §1144, which are intended to ensure that employee benefit plan regulation would be "exclusively a federal concern." *Alessi v. Raybestus-Manhattan, Inc.,* 451 U.S. 504, 523 (1981).

Accordingly, any action brought under Puerto Rico law that duplicates, supplements or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA exclusive remedy, and is preempted. *See Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 54-56 (1987); *see also Ingersoll-Rand Co. v. McClendon,* 498 U.S. 133, 143-45 (1990).  As noted above, Plaintiffs waived any objection to the issue of preemption.

It is therefore RECOMMENDED that the Motion for Summary Judgment as to the issue of preemption be GRANTED.

## III.    CONCLUSION

Based upon the foregoing analysis, it is therefore **RECOMMENDED** that defendant's Motion for Summary Judgment  (**Docket No. 66**) be **GRANTED** as to the COBRA and preemption issues and **DENIED** to the ERISA claim.  Motions at **Docket Nos. 74, 75, 77, 82, 83, 92** are to be **NOTED.**

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 72(a) of the Local Rules of Court.  Any objections to the same must be specific and must be filed with the Clerk of Court **within five (5) days** of its receipt. Rule 72(d), Local Rules of Court; Fed. R. Civ. P. 72(b).  Failure to timely file specific objections to the Report and Recommendation is a waiver of the right to review by the District Court.  *United States v. Valencia-Copete*, 792 F.2d 4 (1st Cir. 1986); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1st Cir. 1980).  The parties are advised that review of a Magistrate-Judge's Report and Recommendation by a District Judge does not necessarily confer entitlement as of right to a *de novo* hearing and does not permit consideration

of issues not raised before the Magistrate-Judge. *Paterson-Leitch v. Massachusetts Elec.*, 840 F.2d 985 (1st Cir. 1988).

> **SO RECOMMENDED.**

At San Juan, Puerto Rico, this 15th day of September, 2005.


S/**AIDA M. DELGADO-COLON**
**U.S. Magistrate-Judge**