IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

EUSEBIO COTTO VILLEGAS; ET AL.,

     Plaintiffs,

       v.                                   Civ. No. 00-1969(PG)

FEDERAL EXPRESS CORPORATION; ET AL.,

  Defendants.

## OPINION AND ORDER

Plaintiffs Eusebio Cotto-Villegas ("Cotto"), his wife Ana Santana-Concepción, and their Conjugal Partnership (collectively referred to as "plaintiffs") filed the above-styled and captioned suit pursuant to the Employment Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1001 et seq. Their main allegation is that Cotto, who is a participant in a short term disability benefit plan ("STD") administered by defendant Federal Express Corporation ("FedEx" or "defendant") was arbitrarily denied STD benefits. Also, Cotto alleges that upon his retirement he was issued a defective notice under the Consolidated Omnibus Budget Reconciliation Act ("COBRA") and was denied the opportunity to elect the same health care coverage as FedEx's employees hired before January 1988. Plaintiffs also bring supplemental state claims alleging violations of the state anti-discrimination and tort law.

Before the Court is Magistrate Judge Aida M. Delgado's[1] Report and Recommendation ("R&R") (Docket No. 101) regarding defendant's Motion for Summary Judgment (Docket No. 66). For the following reasons, the Court **grants in part and denies in part** defendant's motion.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

Cotto was an employee of Flying Tiger Line (hereafter "FTL") from September 16, 1981 to August 6, 1989. On August 7, 1989, FTL merged with

---

[1] On March 20, 2006, Magistrate Judge Delgado was sworn in as District Judge for the District of Puerto Rico. This R&R was issued before that date.

[2] The Magistrate Judge made extensive and detailed factual findings based on the record.(Docket Nos. 66, 75, 77, 83.) The parties do not object to the Magistrate Judge's factual findings. Hence, the Court culls the relevant facts from the R&R.

FedEx. Cotto was classified as a Customer Service Agent for Puerto Rico. At the time of the merger, FedEx devised a system of assigning seniority for former FTL employees who had years of service with FTL. This calculation resulted in Cotto being assigned a hire date of June 24, 1986.

As a FedEx employee, Cotto had coverage under a STD Plan and a Group Health Plan. In 1998 and 1999 the Plan Administrator for both plans was Group Health Federal Express Corporation. Also, in 1998 the STD Plan was a General Asset Plan and was paid for by Federal Express Corporation directly from its general assets. In 1998, the paying administrator for the STD Plan was Unicare. Thereafter, and pursuant to the 1999 Supplement to Employee Benefits, the paying administrator changed to Kemper National Services (hereinafter "Kemper"). The Court is unaware of the specific date for the change, however, a letter delivered to Cotto indicates that as of at least September 25, 1998, the claims paying administrator was no longer Unicare but Kemper.

### The request for STD benefits

On February 27, 1998, Cotto sustained a work related injury and reported to the State Insurance Fund (hereafter "SIF") on March 3, 1998. The SIF verified that on March 6, 1998, Cotto had requested a medical statement or certificate for submission to his company's disability insurance plan.

On March 11, 1998, Carlos Dueño (hereafter "Dueño"), FedEx's Human Capital Management Program Manager, informed Cotto by letter the benefits available to him during his medical leave of absence. This letter is identified as the "Medical Leave of Absence Information and Requirement letter." It advised Cotto that he was "solely responsible for reporting" his STD claim to the claim paying administrator, Unicare, and provided its telephone number. The letter also warned that failure to respond promptly to requests from the SIF and Unicare could result in the delay, suspension or denial of his Workers' Compensation or Disability Plan benefits and the termination of his employment. Lastly, the letter requested that Cotto contact Dueño on a weekly basis.

Cotto testified during his deposition that he actually called Unicare on March 16, 1998, to report his claim. He does not know, however, the name of the person with whom he spoke. Cotto testified that he believed he had filed his claim with Unicare when he called on March 16, 1998. It is Cotto's

position that his phone call to Unicare tolled the 60-day period to submit his claim. He further testified that he explained to Unicare that he could not secure a doctor's certificate because his records were misplaced at the SIF. Cotto narrated having been told that Unicare would send him a package to complete, and that once he received the medical report he had to send it and open the case or claim. At that time, Unicare advised him that a medical certificate was required and that without it a claim could not be officially opened.

Cotto advised Dueño of his conversation with Unicare representatives sometime during March and April. Cotto testified that when he first spoke with Dueño he advised him that Unicare had requested medical information. Cotto did not speak to Dueño again until he received the medical certificate that had been requested. Cotto testified that he tried to get the medical certificate, and relied upon what he had been told by Unicare to the effect that he could not go forward with his claim until he obtained the medical certificate.

By April of 1998, Cotto had not received the certificate so he contacted the SIF's office to inquire and determine the status of his request. On April 14, Dueño authored a letter to the SIF requesting medical information for three FedEx employees, including Cotto. In the letter, Dueño explained that FedEx provides their employees monetary benefits during the time an employee is incapacitated but that it could not provide the benefits until it received SIF's medical certificate inasmuch as it was required before benefits could be afforded. Within the letter, Cotto is asked to have the medical information delivered to Unicare "as soon as possible."

Dueño explained during his deposition that he included Cotto's name in the letter to enable him to obtain and submit his medical record and information as soon as possible. Contrary to Cotto's testimony, Dueño testified that he was unaware that Cotto had not received a medical certificate from the SIF or that he was having problems because his medical record had been lost or misplaced at the SIF. Dueño testified that at the time he sent the letter to the SIF he had no idea of the status of Cotto's claim before Unicare. Furthermore, he testified that he was unaware if Cotto had or had not filed his claim. Nonetheless, Dueño testified that once he received the medical information he automatically forwarded it to Unicare for the

approval or denial of the claim as determined by Unicare.

On May 12, 1998, Dueño sent to Karen Hines, Unicare's Claims Administrator, the medical information he received from the SIF for Cotto's injury. The cover memo states, "Please advise by email if this information is sufficient to approve the claim," making reference to Cotto's claim with Unicare. Dueño testified that after he sent the memo, Karen Hines informed him that Unicare had not received any telephone calls or claims from Cotto, and that the last telephone call recorded from Cotto was in 1994 when he was on a leave of absence.

On June 13, 1998, Cotto sent a letter to Dueño enclosing a medical certificate that he had finally obtained from the SIF. The letter refers to his claim with Unicare by stating "the information is provided in order to expedite the handling of my claim through Unicare." Twelve days later, Nelly Concepcion, FedEx's District Personnel Manager, sent a letter to Cotto indicating that its records revealed that as of that date Cotto had not complied with the instructions set forth in the March 11 letter from Dueño. The letter states: "as per policy, you only had 60 days from the injury date to file a claim with Unicare. Upon verification with Unicare, as of today you have not filed your claim with them." This June 25 letter indicates that the SIF would only provide FedEx with information regarding Cotto's leave status and release date, but would never provide medical information to FedEx. This contradicts, however, Dueño's May 12 memo acknowledging having received medical records from either the employee or the SIF and his previous request to the SIF for Cotto's records.

The next day, June 26, 1998, Dueño sent a memorandum to Cotto advising as follows:

> You failed to follow the requirement instructions because as of today (over 90 days after your injury date) you have not opened the claim with Unicare. As per the program guideline, you had only 60 days from the date of the injury to open the claim. Therefore, all benefits under STD/LTD program is [sic] denied due to your failure in complying with the basic requirements.

On July 3, 1998, Cotto wrote a letter of protest arguing that neither Unicare nor FedEx would accept a claim without the medical certificate from the SIF. Over a month and one-half later, on August 19, 1998, Dueño sent a

letter to Cotto confirming a telephone conversation had on the same day, and explaining that Cotto's claim for STD benefits had been denied due to his failure to follow the procedures as explained in the Medical Leave of Absence Information and Requirement letter (the March 11 letter). Dueño also indicated that it was Cotto's responsibility to call Unicare and initiate a claim, which Cotto had 60 days from the date of injury to do so, and that he had failed to do so. In the letter, Dueño explained the appeal process and advised Cotto that he had 10 days to request a review with the Federal Express Corporation. For such purposes, Dueño provided Cotto with an address in Memphis, Tennessee.

The record reflects that the ten-day period to seek review as explained by Dueño in his August 19 letter does not correspond and agree with the information in the STD Plan. The Plan states that the request for review must be submitted in writing to the address provided in the denial letter, within 60 days from the date the claims paying administrator sends its written denial.

### The Appeals Process

On August 28, 1998, and following Dueño's instructions, Cotto authored a letter to FedEx's Employee Benefits Quality & Performance Standards office and/or board explaining the difficulties he had encountered with the SIF in obtaining a medical certificate in order to have it submitted to FedEx. (See Docket No. 77, Exhibit 19.) The letter states, "On March 6, 1998 I formulated the request for a medical certificate from SIF in order to submit my claim to Unicare."

On September 25, 1998, Cotto received a letter from Pat Henson("Henson"), Benefits Specialist for FedEx in which she advised him that FedEx had received his August 28,1998 letter of appeal on September 21, 1998, but that it was unable to accept the appeal. Henson indicated that Dueño had denied Cotto's claim in error and that Dueño should have informed him that he could not accept his claim because he was not the claims paying administrator. This time Cotto was instructed to contact Kemper to report his claim because only Kemper had the authority to accept, approve or deny a claim. This September 1998 letter is the first time he was notified that Unicare was no longer involved in managing the STD plan.

After he received the letter, Cotto telephoned Kemper on September 29,

1998, and spoke to Elaine Fremer ("Fremer"), Case Initiation Coordinator for Kemper. She asked Cotto if he had called Unicare. Cotto responded "yes," but that it had been some time prior to the change to Kemper. Fremer indicated that there had been a transition phase and that Kemper was now handling the processing and settling of claims for FedEx. Cotto did not specifically tell Framer he had called Unicare in March, but he did tell her that he had previously called Unicare.

On October 8, 1998, Cotto was advised by Fremer that his claim for STD benefits had been denied. The letter stated that the notice of claim was filed on September 29, 1998, which was 212 days after the commencement of his disability, and was not filed within 60 days of commencement of the STD as required by the plan. It is undisputed that September 29, 1998, is the date in which Cotto called Kemper. The letter makes no reference to his previous call to Unicare nor does it speak of the previous mistaken denial of the claim by Dueño. In the letter, Cotto is advised that if he wished to perfect his claim he had to submit documentation supporting his assertion that he had given notice of the claim within 60 days.

On October 21, 1998, Cotto appealed the denial and submitted certain information for analysis and review. Cotto indicated at his deposition that the STD record included the following documents:
- Fremer/Kemper letter dated October 8, 1998;
- Cotto's letters dated October 21, 1998, August 28, 1998, March 23, 1998, and March 10, 1998;
- Dueño/FedEx's letters dated August 19, 1998, and March 11, 1998;
- Concepción/FedEx's letter dated June 25, 1998;
- Henson/FedEx's letter dated September 25, 1998;
- SIF's letter dated July 1, 1998; Lu Crowder/FedEx's letter dated January 15, 1999; and,
- FedEx's Leave of Absence History Screen.

FedEx denies that the administrative record contains the August 19, 1998, denial letter by Dueño, the September 25, 1998, letter from Henson regarding the appeal, or the July 2, 1998 SIF letter wherein it admits its fault in locating and providing timely disclosure of the medical records pursuant to previous requests. Additionally, FedEx indicated that the administrative record contained the Benefits Review Committee's January 13, 1999 minutes which Cotto did not include is his list of documents. As to the other documents, both parties agree that they were part of the administrative

record[3].

On January 13, 1999, FedEx's Benefits Review Committee met and upheld the denial of the STD claim on the basis that the claim was filed 152 days late inasmuch as his "request for STD benefit was not received by Unicare until 9/29/98."

### The COBRA claim

The Group Health Plan is a trusteed Plan, and its Trustee is The Northern Trust Company. The 1998 Employee Benefits Plan provides that an employee has continuing medical benefit coverage after retirement if the employee meets the age and service requirements and elects Retiree Health Coverage. If the employee does not meet the age and service requirements, then health coverage ends, but the employee may elect COBRA.

The age and service requirements for FedEx employees hired prior to January 1, 1988, for continuous health coverage is that an employee must be age 55 and older with at least ten years of permanent part-time or permanent full-time continuous service after age 45. For FedEx employees hired after January 1988, the employee must be age 55 or older and have at least 20 years of permanent part-time or permanent full-time continuous service after age 35 in order to receive full health benefits.

For former FTL employees, continuous health insurance coverage depends upon a number of factors including classification, age, and years of continuous service. If a FedEx employee was an FTL employee who began to work for FedEx on August 7, 1989, and the employee's job classification on August 6, 1989, was under the categories "General" or "Administration[4]," to be eligible for continuous health coverage, the employee must retire at age 55 or older with at least 20 years of continuous service. The "continuous service" term for former FTL employees is calculated based upon years of service with FTL. Each year of FTL service equals .3953 years of relative

---

[3] The parties agree that the following documents were part of the administrative record: Fremer/Kemper letter dated October 8, 1998; Cotto letters dated October 21, 1998, August 28, 1998, March 23, 1998, March 10, 1998; Dueño/FedEx letter dated March 11, 1998; Concepción/FedEx letter dated June 25, 1998; and, FedEx Leave of Absence History Screen.

[4] FedEx asserts that Cotto's classification fell under the "Administration" category. The Magistrate Judge found that based upon his classification as Customer Service Agent, he appeared to fall under this classification.

continuous service with FedEx.

Cotto retired from FedEx, at age 62, effective September 16, 1999. During his deposition, Cotto admitted that according to the FedEx formula he had not reached 20 years of continuous service to qualify for retirement health coverage. He received a written notice of COBRA rights on September 20, 1999, indicating that he could continue health benefits under FedEx's Employee Health Plan for a period of 18 months. Sixty (60) days were given to elect benefits under COBRA.

Cotto elected not to have continued health care benefits through COBRA, but instead requested that he be afforded the same health care coverage as FedEx employees hired prior to January 1, 1988. His request was denied on the basis that he was not entitled to that coverage because he did not meet the years of service requirement. Cotto was advised of his appeal rights and he exercised those rights via a letter dated December 28, 1999. The Benefits Review Committee denied his appeal and notified Cotto of the decision on April 27, 2000.

## DISCUSSION

### I.      Standard for Reviewing - Report and Recommendation

Pursuant to 28 U.S.C. §§ 636(b)(1)(B), Fed.R.Civ.P. 72(b), and Local Rule 503, a District Court may refer dispositive motions to a United States Magistrate Judge for a Report and Recommendation. See Alamo Rodriguez v. Pfizer Pharmaceuticals, Inc., 286 F.Supp.2d 144, 146 (D.P.R. 2003). The adversely affected party may "contest the Magistrate Judge's report and recommendation by filing objections 'within ten days of being served' with a copy of the order." United States of America v. Mercado Pagan, 286 F.Supp.2d 231, 233 (D.P.R. 2003)(quoting 28 U.S.C. §§ 636(b)(1).) If objections are timely filed, the District Judge shall "make a de novo determination of those portions of the report or specified findings or recommendation to which [an] objection is made." Felix Rivera de Leon v. Maxon Engineering Services, Inc., 283 F.Supp.2d 550, 555 (D.P.R. 2003). The Court can "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate," however, if the affected party fails to timely file objections," 'the district court can assume that they have agreed to the magistrate's recommendation'." Alamo Rodriguez, 286 F.Supp.2d at 146 (quoting Templeman v.

Chris Craft Corp., 770 F.2d 245, 247 (1st Cir. 1985).

## II. Summary Judgment

A motion for summary judgment is governed by Rule 56(c) of the Federal Rules of Civil Procedure, which allows disposition of a case if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See Sands v. Ridefilm Corp., 212 F.3d 657, 660 (1st Cir. 2000). To be successful in its attempt, the moving party must demonstrate the absence of a genuine issue as to any outcome-determinative fact in the record, DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997), through definite and competent evidence. Maldonado-Denis v. Castillo Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994). If the non-movant generates uncertainty as to the true state of any material fact, the movant's efforts should be deemed unavailing. Suarez v. Pueblo Int'l, 229 F.3d 49, 53 (1st Cir. 2000). Nonetheless, the mere existence of "some alleged factual dispute between the parties will not affect an otherwise properly supported motion for summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

The standard of review "in ERISA case differs in one important aspect from the review in an ordinary summary judgment case." Orndorf v. Paul Revere Life Ins. Co., 404 F.3d 510, 517 (1st Cir. 2005). "[W]here review is based only on the administrative record before the plan administrator and is an ultimate conclusion as to disability to be drawn from the facts, summary judgment is simply a vehicle for deciding the issue." Id. (citing Liston v. Unum Corp. Officer Severance Plan, 330 F.3d 19 (1st Cir.2003). "This means the non-moving party is not entitled to the usual inferences in its favor." Orndorf, 404 F.3d at 517 (citation omitted). If "there is no dispute over plan interpretation, the use of summary judgment in this way is proper regardless of whether [the Court's] review of the ERISA decision maker's decision is de novo or deferential." Id.

## III. **Analysis**

FedEx moves for summary judgment asking the Court to uphold the decision to deny STD benefits to Cotto. FedEx argues that the Benefits Review Committee did not act arbitrarily and capriciously when it denied Cotto's benefits based

upon the information that it had at the time. Specifically, it argues that Cotto never informed anyone at FedEx in writing, during the review of his claim on appeal, that he had made the March 1998 telephone call to Unicare to initiate the claim process. According to FedEx, the first record of Cotto making a claim to the paying administrator occurred on September 29, 1998, when he called Kemper and spoke to Fremer. FedEx posits that in the record reviewed by the Benefits Review Committee when it made its decision, there is no mention of any telephone call being made to Unicare in March of 1998. FedEx also moves for summary judgment on plaintiffs' COBRA and supplemental law claims.

Cotto is adamant that he telephoned Unicare on March 16, 1998 to initiate a claim and that at that time he was told that in order to proceed any further he had to provide to Unicare the relevant medical documents from the SIF. Cotto further opposes summary judgment arguing that FedEx breached its fiduciary duty by misrepresenting the terms of the plan and failing to provide him information.

### A. BREACH OF FIDUCIARY DUTY CLAIM

FedEx argues that the Complaint does not raise a claim for breach of fiduciary duty by the plan administrator. Admittedly, the Complaint does not contain the words "breach of a fiduciary duty" and the ERISA count is entitled "Illegal Denial of STD Benefits." Nonetheless, the Magistrate Judge reviewed the complaint and concluded that plaintiffs allege that FedEx made misrepresentations to Cotto and provided misinformation regarding the procedural framework for the review process, and that it improperly processed his claim. The Magistrate Judge determined that these allegations were sufficient to find that plaintiffs properly pled a breach of fiduciary duty claim.

The Magistrate Judge proceeded to discuss the case law regarding breach of fiduciary under ERISA particularly in light of the Supreme Court case of Varity Corp. v. Howe, 516 U.S. 489, 506 (1996) in which the Court specifically reserved the question of "whether ERISA fiduciaries have any fiduciary duty to disclose truthful information on their own initiative, or in response to employee inquiries." Watson v. Deacones Waltham Hosp., 298 F.3d 102, 114 (1st Cir. 2002) (citing Varity, 516 U.S. at 506). The Magistrate Judge indicated,

however, that FedEx had not moved for summary judgment on the issue of breach of fiduciary duty and therefore, did not address the issue other than noting that there appeared to be a significant factual dispute as to the actions or inactions taken by FedEx in administering Cotto's STD claim. (See R&R, Docket No. 101 at 18-20.) The parties filed extensive objections to the Magistrate Judge's conclusion that there appeared to be a breach of fiduciary claim alleged in the complaint.

FedEx asserts that it did not move for summary judgment on the breach of fiduciary duty claim because, until plaintiffs filed their opposition to the motion for summary judgment, there was no fiduciary duty claim at issue in the case. FedEx argues that not only did plaintiffs not use the words "breach of fiduciary duty" in their Complaint but also did not cite the ERISA section applicable to such breaches, nor did they request any relief thereunder.

In its reply, FedEx argues that it cannot be reasonable expected to move for dismissal of a claim which was not before the Court. In other words, FedEx argues that it was simply not possible for FedEx to request a dismissal for plaintiff's breach of fiduciary duties' claim as part of its motion for summary judgment, because it was not until plaintiffs' opposition to the motion for summary judgment that they, for the first time, articulated any such claim. FedEx argues that they have every right to raise as an error in its objections to the R&R the Magistrate Judge's discussion as to a potential fiduciary duties claim. Most important, FedEx avers that such a claim is unavailable to plaintiffs because when there is adequate relief available for the alleged improper denial of benefits through filing suit under ERISA's section 502(a)(1), a cause of action for breach of fiduciary duties is inappropriate pursuant to law. Furthermore, FedEx points out that the alleged misrepresentations, which generally refer to Dueño's erroneous denial of STD benefits, and his erroneous statement regarding the period for appeal, are immaterial to plaintiffs' claim for benefits because Cotto in fact went through the entire review process, including the appeal, and the final decision was based on his failure to timely file a claim with Unicare and not on any erroneous information Dueño provided.

Additionally, FedEx avers that in order for the Court to determine whether or not an ERISA breach of a fiduciary duty has occurred, it must first

determine whether the act complained of constitutes a fiduciary function. FedEx argues that here, it is clear that no claim for breach of fiduciary duties is available to plaintiffs inasmuch as the person who allegedly breached said duties-- i.e., Dueño-- is a nonfiduciary with respect to the Plan. FedEx states that it is undisputed that Dueño had no control over the final decisions regarding the plan, nor did he control the plan's assets.

In sum, FedEx argues that the Magistrate Judge erred in concluding that plaintiffs had stated a claim for breach of fiduciary duties and that even if the Court were to interpret that plaintiffs did make allegations which could be construed as making a claim for breach of fiduciary duties, the same is unavailable to plaintiffs because the appropriate claim is one for benefits under ERISA Section 502(A)(1)(b).

To the contrary, plaintiffs claim that the Magistrate Judge correctly determined that the complaint describes the acts of a breach of fiduciary duty. Furthermore, they argue that the law in this Circuit supports the Magistrate Judge's determination that plaintiffs can bring a breach of fiduciary duty claim. Plaintiffs argue that the Magistrate Judge properly reviewed the complaint pursuant to the appropriate liberal "notice pleading" requirements of Rule 8 of the Federal Rules of Civil Procedure and determined they had adequately pled a breach of fiduciary duties claim. Lastly, plaintiffs argue that because FedEx did not move for summary judgment on the issue the Magistrate Judge correctly refused to address it inasmuch as the moving party has the burden of showing the absence of a genuine issue as to any material fact. It is plaintiffs' position that since FedEx did not carry its burden, it waived any argument in opposition to plaintiffs' claim. Accordingly, plaintiffs argue that FedEx's arguments in support of dismissal of their breach of fiduciary duties claim should be stricken as untimely.

In the Complaint, plaintiffs allege: "defendant's misrepresentations and misinformation given to the plaintiff as to the procedure for requesting review violated his rights under ERISA and it improperly processed his claim." (Docket No. 1, at ¶¶ 27-28.) Having reviewed the record, and the case law, the Court disagrees with the Magistrate Judge that plaintiffs have pled a claim of breach of fiduciary duty pursuant to <u>Varity</u>.

"[I]t is apparent that a claim is a Varity-type claim when it claims

appropriate equitable relief for a violation of a fiduciary duty by an ERISA plan fiduciary." Degnan v. Publicker Industries, Inc., 42 F.Supp.2d 113, 118 (D.Mass.1999)(hereinafter referred to as "Degnan"). To establish a Varity claim, plaintiffs must show two things. First, "that the defendant [was] ... acting as a fiduciary of the plan when it engaged in the conduct complained of." Id. at 119-120. "This issue turns on whether the defendant was exercising 'discretionary authority' respecting 'management' or 'administration' of an ERISA plan." Id. Secondly, plaintiffs must show "that the defendant's conduct amounted to a breach of fiduciary duty under ERISA, whose so-called exclusive benefit rule commands the fiduciary to act for the exclusive purpose of providing benefits to participants and their beneficiaries." Id. (internal quotation marks omitted). "This broad obligation, informed by the common law of trusts, entails not only a negative duty not to misinform, but also an affirmative duty to inform when the trustee knows that silence might be harmful." Id. (quotations and citations omitted).

Plaintiffs may well have liberally pled enough facts to meet the second element of a Varity claim. Nevertheless, plaintiffs' Varity claim fails inasmuch as the alleged misrepresentations plaintiffs point to in the complaint refer generally to Dueño's erroneous and misleading statements. It is undisputed that Dueño had no control over the final decisions regarding the plan, nor did he control the plan's assets and had no fiduciary duties with respect to the plan[5]. In other words, Dueño was not acting as a fiduciary of the plan when it engaged in the conduct complained of. See Degnan, 42 F.Supp.2d at 119-120. Plaintiffs insist, nonetheless, that pursuant to Degnan v. Publicker Indus., Inc., 83 F.3d 27, 30 (1st Cir.1996)(hereinafter referred

---

[5] See 29 U.S.C. § 1104. In order to be a fiduciary, the individual or entity involved must exercise a degree of discretion over the management of the plan or its assets, or over the administration of the plan itself. See 29 U.S.C.A. § 1002(21)(A). Accordingly, an employee that only performs ministerial or clerical functions relating to the administration of a plan is not an ERISA fiduciary since such employee has no discretional authority over the plan management and merely performs the tasks assigned. See Watson v. Deaconess Waltham Hospital, 141 F. Supp. 2d 145, 153 (D. Mass. 2001), aff'd, Watson v. Deaconess Waltham Hospital, 298 F. 3d 102 (1st Cir. 2001)("[t]he established law of the First Circuit is that the mere existence of physical control over a plan or the performance of ministerial administrative tasks is insufficient to create fiduciary status"). See also Beddall v. Sate St. Bank & Trust Co., 137 F. 3d 12, 18, (1st Cir. 1998); 29 C.F.R. § 2509.75-8 (detailing the purely ministerial functions which if performed by a person do not make him a fiduciary because such person does not have discretionary authority or discretionary control respecting management of the plan).

to as "Publicker Indus., Inc.") the Court should reject technicalities and read the complaint liberally to include the federal claim.

In Degnan, plaintiffs' state law claim had been removed to federal court on the basis of complete preemption under ERISA. The Degnan plaintiffs had not filed an ERISA claim but a state law claim which ended up in federal court. The District Court dismissed the case for failure to properly plead an ERISA claim and plaintiffs appealed. While the case was on appeal, the Supreme Court issued the Varity ruling. The Court of Appeals reviewed the complaint and considered that plaintiffs, if granted leave to amend the complaint, could plead a Varity claim. Accordingly, the Court thought it best to remand to give plaintiffs the opportunity to adequately plead their case and then have the Court rule on the merits of such claim. The Court remanded the case with directions to grant the plaintiff permission to file an amended complaint limited ONLY to pleading a Varity-type claim. Publicker Indus., Inc., 83 F.3d at 30. The Court considered that the amendment was warranted to avoid an injustice. Id.

The situation here is quite different. Plaintiffs brought their case originally before this Court and have had ample time to move for leave to amend their complaint to properly plead any causes of action they deemed were warranted. The Varity opinion was issued in 1996 and the complaint here was filed in 2000. Furthermore, the circumstances present in Degnan are clearly not present here.

What is more, plaintiffs should not be allowed to amend their pleadings at this late stage of the proceedings. Rule 15(a) provides that leave to amend "shall be freely given when justice so requires." Colmenares Vivas v. Sun Alliance Ins. Co., 807 F.2d 1102, 1108 (1st Cir. 1986). As a case progresses, however and the issues are joined, the burden on a plaintiff seeking to amend a complaint becomes more exacting. Steir v. Girl Scouts of the USA, 383 F.3d 7, 12 (1st Cir. 2004). Motions to amend are disfavored when the "timing prejudices the opposing party by 'requiring a re-opening of discovery with additional costs, a significant postponement of the trial, and a likely major alteration in trial tactics and strategy'·." Steir, 383 F.3d at 12 (quoting Acosta-Mestre v. Hilton Int'l of P.R., Inc., 156 F.3d 49, 52 (1st Cir.1998). When a motion to amend a complaint is filed after the opposing party has

timely moved for summary judgment, plaintiffs should be required to show "substantial and convincing evidence to justify a belated attempt to amend a complaint." <u>Steir</u>, 383 F.3d at 12 (1st Cir. 2004)(citation omitted). Here, plaintiffs have not shown any convincing evidence that would warrant granting them leave to amend. Furthermore, inasmuch as the amendment would be totally futile, the possibility of ameliorating the allegations in the complaint to state a breach of fiduciary claim is unavailable. This is so because even if the Court were to read the complaint as stating a breach of fiduciary claim, the same would be barred because pursuant to <u>Varity</u>, if plaintiffs can pursue benefits under the plan pursuant to Section a(1), there is an adequate remedy under the plan which bars any further remedy under Section a(3). See <u>LaRocca v. Borden, Inc.</u>, 276 F.3d 22, 28-29 (1 st Cir. 2002).

In <u>Varity</u>, the Supreme Court clarified the holding in <u>Mertens v. Hewitt Associates</u>, 508 U.S. 248 (1993) and ruled that "Section a(3)'s 'catchall' provisions act as a safety net, offering appropriate equitable relief for injuries caused by violations that § [1132] does not elsewhere adequately remedy." <u>Varity Corp.</u>, 516 U.S. at 512. See <u>Watson</u>, 298 F.3d at 109-110; <u>LaRocca</u>, 276 F.3d at 28. "<u>Varity</u> circumscribes the applicability of Section a(3): '[W]here Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief...'." <u>La Rocca</u>, 276 F.3d at 28 (<u>quoting</u> <u>Varity Corp.</u>, 516 U.S. at 515). Following <u>Varity</u>'s guidance, "federal courts have uniformly concluded that, if a plaintiff can pursue benefits under the plan pursuant to Section a(1), there is an adequate remedy under the plan which bars a further remedy under Section a(3)." <u>La Rocca</u>, 276 F.3d at 28-29 (<u>citing</u> <u>Turner v. Fallon Community Health Plan, Inc.</u>, 127 F.3d 196, 200 (1st Cir.1997). See also <u>Tolson v. Avondale Indus. Inc.</u>, 141 F.3d 604, 610 (5th Cir.1998); <u>Wald v. Southwestern Bell Corp. Customcare Med. Plan</u>, 83 F.3d 1002, 1006 (8th Cir.1996); <u>Forsyth v. Humana, Inc.</u>, 114 F.3d 1467, 1475 (9th Cir.1997); <u>Katz v. Comprehensive Plan of Group Ins.</u>, 197 F.3d 1084, 1088-89 (11th Cir.1999). Consequently, because § 502(a)(1)(B) provides plaintiff the opportunity to obtain redress (if benefits were improperly denied), he cannot also seek relief for the same injury under § 502(a)(3). See <u>Turner</u>, 127 F.3d at 200.

Accordingly, the Court **REJECTS** the Magistrate Judge's finding that

plaintiffs have properly pled a claim of breach of fiduciary duty pursuant to
Varity. (R&R, Docket No. 101, at 18-20.) Therefore, the Court needs not reach
the Magistrate Judge's finding that there appears to be a significant factual
dispute as to the actions or inactions taken by FedEx in administering Cotto's
STD claim.

### B. DENIAL OF BENEFITS CLAIM

Under ERISA's civil enforcement provision, Section 502(a)(1)(B), 29
U.S.C. § 1132(a)(1)(B), judicial review of a benefit entitlement decision may
be the subject of two separate standards. On the one hand, if the plan "gives
the administrator or fiduciary discretionary authority to determine
eligibility for benefits or to construe the terms of the plan," then the court
must apply the deferential "arbitrary and capricious" standard of review.
Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115(1989); Leahy v.
Raytheon Co., 315 F.3d 11, 15 (1st Cir.2002). In other words, the arbitrary
and capricious standard applies if a reading of the plan in question indicates
a clear grant of discretionary authority to the administrator in determining
the eligibility for benefits of a participant or beneficiary. See Terry v.
Bayer Corp., 145 F.3d 28, 37 (1st Cir.1998). "This standard means that the
administrator's decision will be upheld if it is reasoned and supported by
substantial evidence in the record." Doyle v. Paul Revere Life Ins. Co., 144
F.3d 181, 184 (1st Cir. 1998)(quoting Associated Fisheries of Maine, Inc. v.
Daley, 127 F.3d 104, 109 (1st Cir.1997); see Vlass v. Raytheon Employees
Disability Trust, 244 F.3d 27, 30 (1st Cir. 2001). "Evidence is 'substantial'
if it is reasonably sufficient to support a conclusion." Id. (citing Doyle,
144 F.3d at 184. "Moreover, the existence of contradictory evidence does not,
in itself, make the administrator's decision arbitrary." Vlass, 244 F.3d at
3 (citations omitted). If on the other hand, no such clear grant of
discretionary authority exists, the standard of review is de novo. Firestone
Tire & Rubber Co., 489 U.S. at 115; see also Rodriquez-Abreu v. Chase
Manhattan Bank, N.A., 986 F.2d 580, 583 (1st Cir.1993).

FedEx contends that the STD Plan and the health insurance plan grant
discretionary authority to the plan administrator, making applicable the abuse
of discretion standard. In support of its position, FedEx refers to the
language in the benefits handbook which states, "[t]he plan administrator, and

in some cases the plan's claims paying administrator or [third party administrator], has the authority and discretion to interpret the plan's provisions and to determine eligibility to receive benefits under the plans." Here, FedEx is the plan administrator and Unicare/Kemper is the paying administrator.

     To the contrary, plaintiffs argue that the Court should evaluate the denial of benefits under a less deferential standard due to a conflict of interest. Upon reviewing the record, and the applicable law, the Magistrate Judge declined to apply a less deferential standard. See Wright v. R.R. Donnelly & Sons Co. Group Benefits Plan, 402 F.3d 67, 75 (1st Cir. 2005)(holding that the arbitrary and capricious standard of review does not change even if the plan administrator will have to pay the plaintiff's claim out of its own assets); Glista v. Unum Life Ins. Co. of Am., 378 F.3d 113, 125-26 (1st Cir. 2004) (noting that simply because a plan administrator has to pay a claim does not deprive the administrator of discretion when the terms of the plan grant discretion). There being no conflict of interest, the Magistrate Judge applied an arbitrary and capricious standard of review. Having reviewed the record and the law, the Court agrees with the Magistrate Judge's choice of standard of review.

                    1. Record Considered

     The Magistrate Judge first determined that although FedEx argued that the Court should look only to the record the Benefits Review Committee examined in denying Cotto's claim, there were a number of facts outside the administrative record that could not be ignored by the Court. Specifically, the Magistrate Judge noted that certain actions taken by Dueño during the time Cotto pursued his STD claim, correspondence authored by Dueño during the relevant time period, and the deposition testimony of Linda Yoakum (hereafter "Yoakum") a member of the Benefits Review Committee for FedEx, could not be overlooked. She held that pursuant to Glista v. Unum Life Ins. Co., 378 F.3d at 124 and Cannon v. Unum Life Ins. Co., 219 F.R.D. 211, 214 (D. Me. 2004) she could consider matters outside the record as evidence of an arbitrary and capricious claims determination.

     FedEx objects arguing that the Magistrate Judge's consideration of a number of facts outside the administrative record is in complete contradiction

to the doctrine. Contrary to Glista[6] and Cannon[7], defendant argues that in the case at bar the evidence allowed and considered by the Magistrate Judge had absolutely nothing to do with evidence in the nature of internal guidelines or rules that the Benefits Review Committee followed when making its decisions, nor is it evidence upon which said Committee actually relied on in its determination, but rather evidence of facts that were not brought before the administrator at the time the decision was made. FedEx insists that the court's review of the benefits decision, made pursuant to an ERISA-regulated employee benefits plan, should focus on the final-decision maker's

---

[6] In Glista v. Unum Life Ins. Co., plaintiffs moved to include as part of the administrative record two documents (and related deposition testimony) that he had obtained, over Unum's objections, in discovery. The first document was a set of excerpts from Unum's computer-based "risk management reference" guide, known as RIMARE, concerning the interpretation of pre-existing condition provisions. The second document was Unum's training materials on applying various pre-existing conditions clauses. These materials were created and revised before Glista's claim was filed. An Unum appeals consultant testified in her deposition that she encountered the materials in a training course on long-term disability claims, but that this course occurred in August 2001, after she had handled Glista's claim. The district court denied Glista's motion to include RIMARE, the training materials, and related deposition testimony in the administrative record. Id., 378 F.3d at 121-22. On Appeal, the Court reversed the decision understanding that these documents should have been considered because they were "more analogous to an administrative agency's guidelines or regulations, which are routinely considered in evaluating whether the agency's actions were arbitrary or capricious." Id., at 122-23. In reaching its decision the Court considered the regulations the Secretary of Labor had issued to guaranty a participant's full and fair review right under 29 U.S.C. § 1133. See 65 Fed.Reg. at 70,246 & 70,252; 29 C.F.R. § 2560.503-1(h)(2)(iii).

[7] In Cannon v. Unum Life Ins. Co., 219 F.R.D. 211, 214 (D.Me.2004), Jeffrey Cannon had filed suit against Unum Life Insurance Company alleging wrongful denial of employee disability benefits and breach of fiduciary duties. Cannon suffered from a drug-induced "dementia" that is characterized by a 15-point drop in IQ and an "organic encephalopathy." According to Cannon's complaint, Unum wrongfully characterized his disability as a "mental illness" in order to subject his claim for long-term benefits to a twelve-month limitation. Canon filed a Motion to Compel discovery requesting that Unum permit him to depose certain Unum employees and that Unum provide him with certain documents and information referred to in Unum's administrative file that Unum has failed to produce in connection with this dispute. Id., 219 F.R.D. at 213-14. The Court agreed that "depositions geared toward discovering the mental processes of Unum staff and their consultants are inappropriate because Unum's claim determination already reflects Unum's rationale for discontinuing Cannon's benefits." Id., at 214. The Court found, however, that said conclusion left unanswered whether Unum had generated "memoranda, policies or guidelines that inform the meaning or application of the mental illness limitation." Id. Such items, the Court found, "would not reflect mental processes of claims handlers, but actual internal rules governing the application of the policy language." The Court held that "if an internal memorandum existed that favored [the claimant's] receipt of continuing benefits, the fact that it was disregarded would be powerful evidence of an arbitrary and capricious claims determination. Accordingly, the Court ordered Unum to produce any and all internal memoranda and other documents that clarified the meaning of the mental illness limitation, how it should be applied and the kinds of specific illnesses that either do or do not fall within its meaning. Id.

determination. Therefore, it is FedEx position that the Court should not consider correspondence or documents of the preliminary review process but focus on the final determination and the record considered by the final decision maker.

To the contrary, plaintiffs argue that they have presented many disputed facts which were supported by FedEx's own internal documents that were prepared and issued during Cotto's claim for STD benefits but were not part of the record. For example, plaintiffs claim that the evidence shows that FedEx, as the plan administrator, failed to follow its own procedures and did not know how to handle and process Cotto's claim for benefits as evidenced by its own Human Capital Manager's illegal denial of the claim. Cotto's claim was supposed to be handled by the claims paying administrator at the time, Unicare. Plaintiffs argue that the Court must consider this evidence because it goes to the gist of Cotto's claim, whether FedEx abused its discretion by denying Cotto's benefits claim. Specifically, they insist that the Court must, as did the Magistrate Judge, consider internal memos between Dueño and the SIF in which Dueño asked the SIF to submit Cotto's medical evidence directly to Unicare inasmuch as these documents were unavailable to Cotto to present to the Benefits Review Committee as evidence of him having submitted a timely claim with Unicare. Plaintiffs also ask the Court to consider FedEx's letter subscribed by Henson telling Cotto that Dueño should have informed him that he could not accept his claim because he was not the paying administrator. Only Kemper had the authority to accept, approve or deny a disability claim. It is plaintiffs' position that this is highly relevant because it shows that had Cotto been provided with this evidence he would have presented it as part of the administrative record and the Benefits Review Committee would have acknowledged that Cotto in fact had timely filed a claim with Unicare. Plaintiffs argue that the Court must consider this evidence because it shows that Cotto was denied a fair and full review[8].

The Court does not think that the <u>Glista</u> and <u>Cannon</u> cases squarely support the Magistrate Judge's conclusion of considering evidence outside the

---

[8] <u>See</u> 29 U.S.C. § 1133 "every employee benefit plan shall: ... afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim."

administrative record, specifically in light of the applicable arbitrary and capricious standard of review. The Court does, however, find support in <u>Liston v. UNUM Corp. Officer Severance Plan</u>, 330 F.3d at 23-24 and more specifically in <u>Orndorf v. Paul Revere Life Ins. Co.</u>, 404 F.3d at 519-520.

In <u>Liston</u>, the Court reviewed the "ordinary rule that review for arbitrariness is on the record made before the entity being reviewed." <u>Id.</u>, 330 F.3d at 23-24. The Court recognized that the First Circuit has declined to adopt an ironclad rule against new evidence but that at the least, "some very good reason is needed to overcome the strong presumption that the record on review is limited to the record before the administrator." <u>Id.</u> The Court acknowledged that this is the prevailing view of practically all of the circuits with the exception of the Fifth Circuit. <u>Id.</u>

More recently in clarifying the <u>Liston</u> ruling, the Orndorf Court held that to determine whether the evidence is admissible or not depends on the nature of the challenge to the decision. <u>Id.</u>, 404 F.3d at 519-520. For example, where "the challenge is not to the merits of the decision to deny benefits, but to the procedure used to reach the decision, outside evidence may be of relevance" when prejudicial procedural irregularity in the ERISA administrative review procedure is alleged. <u>Id.</u> (citation omitted). Such "evidence may be relevant to explain a key item, such as the duties of the claimant's position, if that was omitted from the administrative record." The Court did not catalogue all of the situations in which new evidence would be admissible but did state that the evidence is "more obviously relevant when the attack is on the process of decision making as being contrary to the statute than on the substance of the administrator's decision." <u>Id.</u> Finally, the Court held that this analysis applied regardless of whether the standard of review was *de novo* or arbitrary and capricious.

Here, the Magistrate Judge considered Dueño's April 14, 1998, letter to the SIF requesting Cotto's medical records in which he asked the SIF that the medical records be sent directly to Unicare. This request occurred in April, and it is in April that Cotto again, in apparent follow-up action, spoke to the SIF about his medical records. When the SIF finally sent the medical records to Dueño, he forward them to Unicare on May 12, 1998, with a memo referring to Cotto's claim. In light of this correspondence, the Magistrate

Judge determined that it was reasonable to conclude that Dueño was aware that Cotto had telephoned Unicare and reported his injury. The Magistrate Judge further concluded that the record does not reflect that Dueño ever advised Cotto that he had requested or received the medical records from the SIF or that he had forwarded them on to Unicare. Indeed, she found that the record reflected that it was not until Cotto filed this action that he became aware of the steps taken by Dueño in order to expedite submission of the records within the SIF. Accordingly, she determined that these internal memos between Dueño and the SIF were unavailable to Cotto to present to the Benefits Review Committee as evidence of him having submitted a proper and timely claim with Unicare.

Additionally, the Magistrate Judge considered Yoakum's various interpretations of the STD Plan. The Magistrate Judge found that Yoakum gave conflicting testimony as to when the medical documentation has to be provided. It has to be provided within 60 days of the injury or, at a specific moment after the claim was actually submitted. The Magistrate Judge determined that given the uncertainty of interpretation of the STD Plan time frame requirements, she would consider such factors in reviewing the Benefits Review Committee's decision, particularly, Yoakum's deposition testimony.

It is evident that the matters outside the record that the Magistrate Judge considered fall squarely within the Court's ruling in <u>Orndorf</u>. Plaintiffs allege that there were irregularities in the administrative review process. The evidence at issue has nothing to do with whether Cotto's disability could or could not be compensated by the Plan. Furthermore, although this is a denial of benefits case, the denial was because of an alleged untimely filing of the claim. The documents FedEx argues were not part of the record go the core of the issue in controversy: whether Cotto timely filed a claim for benefits. The Court agrees with Magistrate Judge in that Cotto had no way of finding out about Dueño's correspondence, efforts, and letters until this case was filed. These documents are directly related to the issue of how FedEx properly or improperly handled Cotto's claim which eventually led to the denial of benefits. Therefore, the Court finds that there are enough reasons that overcome the presumption that the record should be limited to the one that was before the final review committee. <u>Cf. Doe v.</u>

Travelers Ins. Co., 167 F.3d 53, 57-58 (1st Cir. 1999)(In deciding "what 'record' should be used in judging the reasonableness of [defendant's action] ... it is not clear that any single answer covers all of the variations in ERISA cases; the 'record' may depend on what has been decided, by whom, based on what kind of information, and also on the standard of review and the relief sought[9]").

### 2. Arbitrary and Capricious

The Magistrate Judge considered that although it is undisputed that Cotto did not present any evidence establishing that he had called Unicare to start the claims process, it appears, based on the correspondence authored by Dueño, that he in fact timely filed his claim and, therefore, it should not have been denied as untimely. The Magistrate Judge also considered that the wording of the Plan regarding reporting and filings claims was confusing. Because the terms were unclear, she recommends that summary judgment be denied.

Defendant objects arguing that the administrative record the Benefits Review Committee reviewed, consisting of the documentation Cotto proffered in his appeal, showed that Cotto did not provide notice of his claim to the claim paying administrator until September 29, 1998, which was 212 days after the commencement of his disability. Accordingly, because the Committee did not have any evidence before it establishing that plaintiff had filed a timely claim, it decided to deny it. Defendant insists that the record showed that throughout the claim and appeal process, Cotto was repeatedly told that there was no evidence in the record to the effect that he had contacted Unicare within the required 60 days after the injury to open his STD claim. Defendant

---

[9] The Court notes that many of the Circuit Courts that have allowed evidence outside the record have done so in the context of *de novo* review and not in arbitrary and capricious review scenarios. See DeFelice v. Am. Int'l Life Assurance Co. of N.Y., 112 F.3d 61, 65-67 (2d Cir.1997); Luby v. Teamsters Health, Welfare & Pension Trust Funds, 944 F.2d 1176, 1184-85 (3d Cir.1991); Quesinberry v. Life Ins. Co. of N. Am., 987 F.2d 1017, 1021-27 (4th Cir.1993) (en banc); S. Farm Bureau Life Ins. Co. v. Moore, 993 F.2d 98, 101-02 (5th Cir.1993); Perry v. Simplicity Eng'g, 900 F.2d 963, 966-67 (6th Cir.1990); Casey v. Uddeholm Corp., 32 F.3d 1094, 1098-99 (7th Cir.1994); Donatelli v. Home Ins. Co., 992 F.2d 763, 765 (8th Cir.1993); Mongeluzo v. Baxter Travenol Long Term Disability Benefit Plan, 46 F.3d 938, 943-44 (9th Cir.1995); Hall v. UNUM Life Ins. Co., 300 F. 3d 1197, 1200-1203 (10th Cir. 2002); Moon v. Am. Home Assurance Co., 888 F.2d 86, 89 (11th Cir.1989). The Court of Appeals for the First Circuit, however, has declined to rule on the issue and I thus find that in light of the particular circumstances present in this case and the holding in Orndorf, summary judgment should not be granted. See id., 404 F.3d at 520.

further argues that nowhere in plaintiff's own written communications to Dueño, Fremer, or Henson during the period relevant to the claim did he mention his March 1998 call to Unicare. Accordingly, defendant argues that the Benefits Review Committee's denial of Cotto's benefits was not arbitrary or capricious inasmuch as it was based on the record before it. The alleged communications Cotto claims he made regarding the March telephone call were simply not part of the claim record and could not have been considered by the Benefits Review Committee. It must be noted, as stated earlier, that until Cotto filed this action, he was unaware of the correspondence authored by Dueño.

To the contrary, plaintiffs argue that it is an undisputed fact that there was confusion as to the handling of Cotto's claim. Even the plan administrator was confused as to who was supposed to handle Cotto's claim. Plaintiffs argue that this reveals serious ERISA procedural violations and that the process was materially tainted. Plaintiffs aver that the integrity in the decision making process was permeated with irregularities and confusion and that as a result, the process became arbitrary causing great prejudice to Cotto. Plaintiffs argue that defendant selectively and conveniently chose what facts the Court should consider. If this were allowed to happen it would render pointless ERISA's remedial nature. With regards to the plan's terms, plaintiffs point out that FedEx has not been able to clarify the misunderstanding the Magistrate Judge identified as to whether reporting a claim is the same as filing a claim pursuant to the Plan. Plaintiffs argue that summary judgment should be denied because the terms of the plan are susceptible to reasonable but differing interpretations, one of which favors the non-moving party.

Upon review of the record, the Court believes that the circumstances present in the case tilt the balance in favor of a denial of the motion for summary judgment. As is clear from the preceding discussion, there is a dispute as to what documents were considered by the Benefits Review Committee which in turn goes to the substance of the issue in controversy: the timeliness of Cotto's claim.

Cotto alleges he authorized the release of his medical records by the SIF and there is evidence that when confronted with a delayed response, Dueño

assisted by requesting such records from the SIF. Dueño's letters could be
considered as evidence that in fact Cotto had opened a claim at Unicare. The
SIF responded not only submitting the medical evidence but acknowledging that
the delay was prompted by its negligence in processing the request for
information and afterwards by losing Cotto's records. Furthermore, Dueño's May
12, 1998, letter to Karen Hines, Unicare's Claims Administrator, making
reference to Cotto's claim with Unicare and asking her if the information
submitted was sufficient to approve the claim, could also be considered as
evidence that Cotto had timely filed a claim with Unicare.

According to Cotto, he submitted to the Benefit Review Committee the
following documents: the July 2, 1998, letter from the SIF as proof of his
request to obtain the medical certificate to support his claim; the August 19,
1998, denial of benefits letter from Dueño; and the September 25, 1998, letter
from Henson regarding the appeal. FedEx claims that the record that was
reviewed does not include the foregoing. As the Magistrate Judge
characterized, this is problematic inasmuch as these documents appear to be
highly relevant to Cotto's claim and raise an issue of fact precluding summary
judgment.

Yoakum testified that Unicare has records that reflect when an employee
calls to notify of an injury, yet she did not specifically know as the claims
paying administrator what type of records Unicare actually kept in order to
prove that Cotto had called. She further testified that there was no record
of his alleged telephone call. However, when Cotto spoke to Fremer at Kemper
on September 29, 1998, he relayed the information that he had reported to
Unicare by telephone and this information appears not to have been considered
as a report or notice of the claim.

The Benefits Review Board found that Cotto's request for STD benefits was
not received by Unicare until 9/29/98. At the outset, this is incorrect and
misleading inasmuch as the record reflects that by this date Unicare was no
longer the claims paying administrator. The September 29th date, is the date
Cotto apparently contacted Kemper as he was instructed to do on September 25th
by FedEx (i.e. Henson). Yet, because Henson's letter was not considered, the
Benefits Review Committee was unaware of this fact. Additionally, because it
did not consider either the Henson letter or the August 19, 1998, Dueño

letter, it did not take into account Dueño's involvement in erroneously acting as the claims paying administrator, denying the claim, and providing Cotto incorrect information regarding the appeal process. Plaintiffs posit this is an abuse of discretion.

Furthermore, pursuant to the March 11, 1998, letter, Dueño advised Cotto to telephone Unicare which Cotto claims he did. On August 19, 1998, however Dueño sent a letter to Cotto telling him that his claim for benefits had been denied because he had failed to follow the procedures as explained in the March 11, letter. In that letter, Dueño explained the appeals process and advised Cotto that he had ten days to request a review with the Federal Express Corporation. The record reflects, however, that the ten-day period to seek review as explained by Dueño does not correspond and agree with the information in the STD Plan. The Plan states that the request for review must be submitted in writing to the address provided in the denial letter, within 60 days from the date the claims paying administrator sends its written denial.

Regardless of whether these events rise to a level of abuse of discretion, the fact is that the letters support the conclusion that Cotto's claim was submitted prior to September 29, 1998, and that his claim was improperly handled by FedEx. I concur with the Magistrate Judge in that it appears that the switching of claims paying administrator from Unicare to Kemper played a key factor in the mishandling of Cotto's claim. This mismanagement may not necessarily rise to a level of arbitrary and capricious behavior but is sufficient to deny summary judgment. The Court cannot ignore that it was Dueño, FedEx's Human Capital Management Program Manager, who, outside of his scope of authority, denied plaintiff's disability claim and misinformed Cotto as to the process for filing his claim.

This is truly and exceptional case. Typically, in arbitrary and capricious review cases, courts will review what the appeals board or review committee examined and finally determined to see whether it was reasonably based on the evidence.

> In an ERISA benefit denial case, trial is usually not an option: in a very real sense, the district court sits more as an appellate tribunal than as a trial court. It does not take evidence, but, rather, evaluates the reasonableness of an administrative

determination in light of the record compiled before
the plan fiduciary.

Leahy, 315 F.3d at 17-18. See Giroux v. Fortis Benefits Ins. Co., 353
F.Supp.2d 45, 51 (D.Me.2005)(finding that because the complete administrative
record was properly before the Court, evaluation of the denial of benefits
claim could be resolved on the existing record through summary judgment).

Here, however, it is not clear what the record before the plan fiduciary
contained. The Court could very well consider only FedEx's version of the
administrative record and determine whether the decision was reasonable. But
as the Court has explained, the peculiar circumstances surrounding plaintiff's
claim, move the Court to err on the side of caution, deny summary judgment,
and proceed to hold a bench trial[10]. Without a clear and undisputed version of
the record before the final decision maker, the Court cannot determine, as a
matter of law, whether the decision was arbitrary or capricious.

Furthermore, the ambiguities in the plan's terms regarding whether
reporting a claim is the same as filing a claim also support the Court's
conclusion. See Hughes v. Boston Mut. Life Ins. Co., 26 F.3d 264, 268 (1st
Cir. 1994); Santiago Rolon v. Chase Manhattan Bank, 912 F.Supp. 19, 22-23
(D.P.R. 1996).

The terms of the STD plan provide that Cotto was to report his STD claim
to Unicare within 60 days following the disability commencement date. As set
forth in the plan, the steps to follow in filing an STD claim require the
employee to simply "call" the STD claims paying administrator and to call and
inform his manager. The plan also advises that the employee is responsible for
reporting the claim.

In the March 11, 1998, letter from Dueño, Cotto was advised, "[t]o report
your claim, contact Unicare at 1-800/686-1495." FedEx alleges that denial of

---

[10]Although the issue has not yet been addressed by the First Circuit Court of
Appeals, District Courts within the First Circuit have held, as have most Circuit
Courts, that no right to a trial by jury exists with respect to a claim for
benefits under ERISA. See Lopez v. Astrazeneca Pharmaceuticals LP, No. Civ. 05-1285
DRD, 2006 WL 508095 (D.P.R. March 1, 2006); Peña Marquez, et al., v. Bristol-Myers
Squibb Puerto Rico Inc., et al., No. Civ. 04-1769(PG), 2005 WL 2297542 (D.P.R. Sept.
21, 2005);Capozza Tile Co., Inc. v. Joy, 223 F.Supp.2d 307, 323 (D.Me. 2002); Dudley
Supermarket, Inc. v. Transamerica Life Ins. and Annuity Co., 188 F.Supp.2d 23, 24
(D.Mass. 2002);Turner v. Fallon Community Health Plan Inc., 953 F.Supp. 419, 422
(D.Mass.1997); Fuller v. Connecticut General Life Ins. Co., 733 F.Supp. 462, 463, 465
(D.Mass.1990); Berlo v. McCoy, 710 F.Supp. 873 (D.N.H. 1989); Turner v. Leesona
Corp., 673 F.Supp. 67 (D.R.I. 1987).

STD benefits occurs if the employee fails to report his STD claim to Unicare within 60 days following the disability commencement date. The Magistrate Judge noted that although it is not specified in the plan, it appears that FedEx interprets the STD plan as requiring the submission of medical evidence within 60 days of the injury. Yoakum testified that if the medical evidence is not received by such time, the claim is denied[11]. The Magistrate Judge concluded that the plan documents submitted to the Court do not contain a 60-day period to submit the evidence. The Plan merely requires that supporting evidence be submitted. The Magistrate Judge found these terms confusing inasmuch as it was not clear to her whether reporting a claim was the same as filing a claim or whether a telephone call is considered a report or filing a claim. Also, Yoakum's testimony revealed the lack of clarity as to what exactly were the applicable time frames for filing a claim and submitting the medical evidence.

As can be gleaned from the preceding discussion, there are issues of fact regarding the record considered by the Benefits Review Committee and confusion as to the plan's terms which make summary judgment inappropriate. Accordingly, the Court adopts the Magistrate Judge's recommendation and denies summary judgment as to this issue.

### C. COBRA

Cotto alleges that upon his retirement he was issued a defective notice under COBRA and was denied the opportunity to elect the same health care coverage as FedEx employees hired before January 1988.

COBRA "requires that employers allow former employees the opportunity to

---

[11]  Yoakum testified that once an employee is injured, he notifies Unicare/Kemper by telephone so that the disability process can begin. The telephone call starts the process and the claim is opened or reported as soon as the employee calls. Medical documentation has to be provided by the employee and his physician to substantiate the disability. According to Yoakum, the Benefits Review Committee had not developed any exceptions for the late filing of benefits, claims or supporting records. She further testified that the Benefits Review Committee did not take into consideration the fact that Cotto's medical record was lost by the SIF, because there was no record of him ever opening the claim in the first place. More importantly, Yoakum testified that she had no idea whether Cotto filed his claim through documents or by calling Kemper or Unicare. Yoakum indicated that normally medical documentation would be sent to Unicare, but since the case was an appeal, she did not know where the documentation had been sent. Yoakum testified that the Benefits Review Committee was unaware that Henson of FedEx had notified Cotto that Dueño had previously denied his STD claim in error. More so, the Benefits Review Committee did not know that Henson had advised Cotto to file his claim with Kemper.

elect the continuation of coverage under the same terms of the employer's group health plan at the employee's own cost for a maximum of eighteen (18) months after the occurrence of certain 'qualifying events'." Rodriguez v. International College of Business and Technology, Inc., 364 F.Supp.2d 40, 44 (D.P.R. 2005); see 29 U.S.C. § 1161, 1162(2)(A)(I). COBRA permits health plans to require payment of a premium for such continuation coverage. See 29 U.S.C. § 1162(3). The "continuation coverage" required by COBRA must be "identical to the coverage provided under the plan to similarly situated beneficiaries under the plan with respect to whom a qualifying event has not occurred," 29 U.S.C. § 1162(1), and "[i]f coverage is modified under the plan for any group of similarly situated beneficiaries, such coverage shall also be modified in the same manner for all individuals who are qualified beneficiaries under the plan pursuant to [COBRA]." Id.

     The Magistrate Judge determined that because Cotto is a former FTL employee he falls under a different retirement plan than FedEx's employees who were hired by FedEx prior to January 1, 1988. Cotto admitted that according to the FedEx formula he had not reached 20 years of continued service to qualify for retirement health coverage. It is undisputed that he received a written notice of COBRA rights on September 20, 1999, indicating that he could continue health benefits under FedEx's Employee Health Plan for a period of 18 months, and that he chose not to make the election. The Magistrate Judge found that Cotto's argument that he is not afforded the same health care coverage as FedEx employees hired prior to January 1, 1988, was without merit as he was really arguing that he had to pay for the coverage, not that the coverage was not the same. COBRA expressly permits health plans to require payment of a premium for such continuation coverage. The Magistrate Judge concluded that Cotto cannot escape this fact, just as he cannot escape the fact that he does not have the qualifying years for continued health care coverage as provided by the Health Care Plan.

     The parties do not raise objections to the Magistrate Judge's findings regarding the COBRA claim. Having carefully reviewed the R&R and the record, the Court **ADOPTS** the recommendation and GRANTS the Motion for Summary Judgment as to the COBRA issue.

### D. PREEMPTION

In the Complaint, plaintiffs alleged violation of state anti-discrimination and tort law. There are, however, no allegations indicating how these statutes were violated. FedEx argues that these state law claims are preempted by ERISA because the relief sought is limited to securing benefits under the Plan. Plaintiffs did not respond to FedEx's motion for summary judgment on this issue, therefore, they have waived any objection. See Local Civil Rule 7.1(b). Accordingly, the Magistrate Judge recommends that FedEx's motion be granted as to this issue.

According to the statute, ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title." 29 U.S.C. § 1144(a). See Padilla De Higginbotham v. Worth Publishers, Inc., 820 F.Supp. 48, 49 (D.P.R. 1993). Any action brought under Puerto Rico law that duplicates, supplements or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA exclusive remedy, and is preempted. See Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 54-56 (1987). Having reviewed the record, the Court **ADOPTS** the Magistrate Judge's recommendation and grant summary judgement as to this issue.

### CONCLUSION

For the foregoing reasons, the Court **ADOPTS IN PART** the Magistrate Judge's R&R and **GRANTS IN PART AND DENIES IN PART** the Motion for Summary Judgment.

**IT IS SO ORDERED.**
In San Juan, Puerto Rico, December 20, 2006.

                                    S/JUAN M. PEREZ-GIMENEZ
                                    U. S. DISTRICT JUDGE